# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOUGLAS M. JENNINGS, | ) |
| Plaintiff, | ) MISC. ACTION NO. 05-0160 SLR |
| v. | ) |
| | ) **Pending in the U.S. Dist. Court** |
| AUTO METER PRODUCTS, INC., | ) **for the Southern District of Indiana** |
| GAUGE WORKS LLC, and | ) **Indianapolis Division** |
| GREGORY DAY, | ) |
| | ) **REDACTED** |
| Defendants. | ) |

## JENNINGS' OPPOSITION TO GAUGE WORKS' AND GREG DAY'S MOTION TO QUASH SUBPOENA SERVED ON BANK OF AMERICA

Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

OF COUNSEL:

David M. Lockman, Esquire
MAGINOT, MOORE & BECK, LLP
111 Monument Circle, Suite 3000
Indianapolis, IN 42204-5115
(317) 638-2922

*Attorneys for Plaintiff Douglas M. Jennings*

Filed Under Seal on August 25, 2005
Redacted Version Filed on September 23, 2005

DB02:5054160.1

064488.1001

# TABLE OF CONTENTS

**Page**

I. Jennings Subpoena Is All Reasonably Calculated To Lead To The Discovery Of Admissible Evidence ..................................................................................................2

II. Gauge Works And Greg Day Are Not The Proper Parties To Assert Undue Burden And Are Without Sufficient Knowledge To Make The Requisite Showing Even If They Were Proper Parties ..................................................................................................7

III. All Issues Of Confidentiality Are Adequately Addressed By The Stipulated Protective Order Entered In The Underlying Case..........................................................................9

Conclusion ..................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

Allen v. Howmedica Leibinger, et al.,
   190 F.R.D. 518 (W.D. Tenn. 1999) ................................................................................ 3

Amcast Indus. Corp. v. Detrex Corp.,
   38 F.R.D. 115 (N.D. Ind. 1991) ..................................................................................... 3

Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.,
   174 F.R.D. 609 (M.D. Pa. 1997) .................................................................................... 3

Cash Today of Texas, Inc. v. Greenberg,
   2002 U.S. Dist. LEXIS 20694 (D. Del. 2002) ............................................................... 8

Chubb Integrated Systems, Ltd. v. National Bank of Washington,
   103 F.R.D. 52 (D.C. 1984) ............................................................................................. 3

Coker v. Duke & Co., Inc.,
   177 F.R.D. 682 (M.D. Ala. 1998) .................................................................................. 3

Compagnie Francaise d' Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,
   105 F.R.D. 16 (N.Y. 1984) ............................................................................................. 3

Culkin v. Pitney Bowes, Inc.,
   225 F.R.D. 69 (D. Conn. 2004) ...................................................................................... 8

Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.,
   132 F.R.D. 204 (Ind. 1990) ............................................................................................ 3

Henson v. Wyeth Laboratories, Inc.,
   118 F.R.D. 584 (W.D. Va. 1987) ................................................................................... 9

Jones v. Hamilton County Sheriff's Dept.,
   2003 U.S. Dist. LEXIS 10100 (S.D. Ind. 2003) ............................................................ 7

Josephs v. Harris Corp.,
   677 F.2d 985 (Pa. 1982) ................................................................................................. 3

McLeod, Alexander, Powel and Apffel, P.C. v. Quarles,
   894 F.2d 1482 (5th Cir. 1990) ....................................................................................... 2

Mead Corp. v. Riverwood Natural Resources Corp.,
   145 F.R.D. 512 (D. Minn. 1992) ................................................................................... 3

DB02:5054160.1                                                                                                                  064488.1001

Momah v. Albert Einstein Medical Center,
    64 F.R.D. 412 (E.D. Pa. 1996) ............................................................................... 3

Patterson v. Avery Dennison Corp.,
    281 F.3d 767 (7th Cir. 2002) ................................................................................... 8

Roesberg v. Johns-Manville Corp.,
    85 F.R.D. 292 (Pa. 1980) ........................................................................................ 3

Sills v. Bendix Commercial Vehicle Systems, LLC,
    2005 U.S. Dist. LEXIS 3392 (N.D. Ind. 2005) ....................................................... 8

United States ex rel. Roberts v. QHG of Ind., Inc.,
    1998 U.S. Dist. LEXIS 23512 (N.D. Ind. 1998) ..................................................... 3

**Rules**

Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 3

Fed. R. Civ. P. 33(b)(4) ........................................................................................................ 3

Fed. R. Civ. P. 45(c)(1) ........................................................................................................ 7

DB02:5054160.1                                                                                                                                   064488.1001

## BACKGROUND

Plaintiff, Doug Jennings brought the underlying action against Defendants, Gauge Works and Greg Day for racketeering schemes designed to impact interstate commerce by benefiting the enterprise of a partnership between Gauge Works, Greg Day, and Auto Meter Products, Inc. The first scheme involves the mailing and wiring of fraudulent documents and misrepresentations to an Examiner of the U.S. Patent Office ("PTO") in an effort to prevent Mr. Jennings from obtaining allowance of his pending patent application on an aftermarket instrument cluster bezel.[1] This scheme injures Mr. Jennings as well as the public interest in the integrity of the PTO. The second scheme is comprised of Mr. Day filing a patent application for a product that is very similar to Mr. Jennings' invention. Mr. Day was aware at the time that he filed the application that he was not the true inventor of the instrument cluster bezel on which he filed and that he, Gauge Works, and Auto Meter had offered their copy of Mr. Jennings' invention to the public more than one year prior to the filing of Mr. Day's application. Mr. Day was issued a patent and Auto Meter promotes the product covered by Mr. Day's illegally obtained patent with significant references to Mr. Day's patent in its marketing materials. Thus, the Defendants are perpetrating a pattern of racketeering activity that continues to injure Mr. Jennings, the PTO, and the public to this day.

During discovery, Mr. Jennings learned that Mr. Day used personal credit cards extensively to conduct the business of Gauge Works. Some highly redacted credit card records evidencing significant raw material transactions have been produced in the litigation to date

---

[1] "Instrument cluster" is a well-known automotive term that refers to an array of separate gauges contained in one housing that are viewed by the driver of a car through or slightly above the steering wheel. These instruments typically are comprised of, for example, a speedometer, tachometer, fuel gauge, and temperature gauge. An

(attached as Ex. 1). Counsel for Gauge Works and Greg Day have stated that the financial records of Gauge Works are not completely intact and that Gauge Works is without the resources to effectively search for all relevant records. (See B. Wright letter to Mr. D. Lockman dated July 5, 2005, attached as Ex. 2.) Mr. Jennings served the subpoena on Bank of America in an effort to obtain these records without further burdening Gauge Works and Mr. Day and so Mr. Jennings could obtain the discovery to which he is entitled without suffering from the alleged spottiness of Gauge Works' and Mr. Day's recordkeeping.

Bank of America has not objected to the subpoena nor has the bank indicated that any undue burden would arise from responding to the subpoena. For reasons set forth more fully below, Jennings submits that the subpoena is reasonably calculated to lead to the discovery of admissible evidence and that the Defendants' concerns about confidentiality have been adequately addressed by the stipulated protective order already entered in the underlying case. Therefore, this Court is asked to deny the motion to quash the subpoena on Bank of America.

## ARGUMENT

### I.   Jennings Subpoena Is Reasonably Calculated To Lead To The Discovery Of Admissible Evidence

Gauge Works and Greg Day have failed to submit any proof of improper discovery. Their boilerplate objections that the subpoena is overly broad and their unsupported assertions of undue burden are inadequate to properly support their motion to quash. Objections, such as those submitted by Gauge Works and Greg Day, not only have been dismissed as being inadequate under the Rules, but also as being so deficient that they require sanctions under Rule 37. As one court has noted:

---

"instrument cluster bezel" is a structure that substantially surrounds the opening in a dashboard through which the driver views the instrument cluster.

2

> Courts have consistently held that an objection to a discovery request cannot be merely conclusory, and that intoning the "overly broad and burdensome" litany, without more, does not express a valid objection. *See*, McLeod, Alexander, Powel and Apffel, P.C. v. Quarles, 894 F.2d 1482 (5th Cir. 1990); Josephs v. Harris Corp., 677 F.2d 985 (Pa. 1982); Compagnie Francaise d' Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16 (N.Y. 1984); Roesberg v. Johns-Manville Corp., 85 F.R.D. 292 (Pa. 1980). The party opposing discovery shoulders the burden of showing that discovery request is overly broad and burdensome, Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., 132 F.R.D. 204 (Ind. 1990), and the written objection must allege facts which demonstrate the extent and nature of the burden imposed by preparation of a proper response. *Cf.* Chubb Integrated Systems, Ltd. v. National Bank of Washington, 103 F.R.D. 52 (D.C. 1984).

Mead Corp. v. Riverwood Natural Resources Corp., 145 F.R.D. 512, 515-16 (D. Minn. 1992).

The United States District Court for the Northern District of Indiana has likewise stated:

> [I]t is well settled that the party objecting to the discovery must state the grounds for the objection 'with specificity'; the mere recitation that a document discovery request is 'overly broad, burdensome, oppressive, and irrelevant' will not suffice. *See* Coker v. Duke & Co., Inc., 177 F.R.D. 682, 686 (M.D. Ala. 1998); Momah v. Albert Einstein Medical Center, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (citations omitted); Fed. R. Civ. P. 33(b)(4). When a discovery objection has been properly articulated, the party seeking discovery must demonstrate that the request lies within the bounds of Rule 26. If this showing is made, the party opposing discovery has the burden of showing that the discovery should not be had. Momah, 164 F.R.D. at 417 (citing Amcast Indus. Corp. v. Detrex Corp., 138 F.R.D. 115, 118-19 (N.D. Ind. 1991).

United States ex rel. Roberts v. QHG of Ind., Inc., 1998 U.S. Dist. LEXIS 23512, *32 (N.D. Ind. 1998) (attached as Ex. 11).

Relevance under the Federal Rules of Civil Procedure has been deemed by courts to be very broad. For example, the court in Allen v. Howmedica Leibinger, et al., 190 F.R.D. 518 (W.D. Tenn. 1999), a case cited by Gauge Works and Greg Day, noted:

> The Federal Rules of Civil Procedure permit discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." Fed. R. Civ. P. 26(b)(1). Relevance for purposes of discovery is, of course, defined very broadly. *See, e.g.,* Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 631 (M.D. Pa. 1997). The information

3

sought need not be admissible in court in order to be relevant. Rather, the relevance burden is met if the party can show that the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Allen at 521. The records being sought by Mr. Jennings encompass the purchases of materials and services for the design, development, and marketing of the instrument cluster bezel made by Gauge Works and Greg Day. One of the documents submitted to the PTO was interpreted by the Examiner to mean the instrument cluster bezel made by Gauge Works was on sale before June of 1999. (See Ex. 3.) At the beginning of the litigation, Gauge Works informed the federal court in Indiana that it had uncontestable evidence that the bezel existed in 1998, but none of that evidence has been produced. (See Case Management Plan attached as Ex.4.) The date of first public disclosure and/or sale of the Gauge Works instrument cluster bezel determines whether Greg Day could properly swear he was the original inventor entitled to a patent on the instrument cluster bezel and whether he informed the PTO of all relevant prior art documents as he was required by his duty of disclosure before the PTO as an applicant. The credit card records on transactions for material and components to make the instrument cluster bezel are relevant to important issues in the lawsuit. Consequently, Mr. Jennings needs to determine which purchases made by Mr. Day for Gauge Works since 1998 are related to the design, development, and marketing of the instrument cluster bezel.

Mr. Jennings has an additional need for the information embodied in the credit card records being sought from Bank of America. Currently pending before the court in the underlying action are the motions of Gauge Works and Greg Day to dismiss them for lack of personal jurisdiction. In an effort to support these motions, Mr. Day has submitted a number of

declarations. Non-party discovery in this case to date has enabled Mr. Jennings to expose the statements of Mr. Day regarding Gauge Works contacts with Indiana as being less than candid.

In one of his declarations, Greg Day, CEO and owner of Gauge Works, has declared that "Gauge Works, LLC does not conduct business in Indiana." See Day Declaration of January 20, ¶ 4 and Day Declaration of May 19, 2005, ¶ 4, (attached as Ex. 5). After Jennings obtained evidence from non-parties that Gauge Works' purchased material from Royalite Thermoplastics of Warsaw, Indiana, Greg Day added the statement to his next declaration that, "Gauge Works, LLC's only contact with Indiana is the occasional purchase of materials from an Indiana company." See Day Decl. of May 19, 2005, ¶ 17, (attached as Ex. 6). This statement insinuates that Gauge Works only purchases from one Indiana company.

In his supplemental declaration of June 16, 2005, Greg Day admitted that purchases from Royalite Thermoplastics had commenced in 1998 but the purchases had ended in September 2000. See Day Decl. of June 16, 2005, ¶ 7, (attached as Ex. 7). Day then disclosed for the first time that Gauge Works bought some materials from Futurex of Bloomingdale, Indiana in 2001, but implied that purchases from Indiana companies stopped from November 2001 to April 2003, a so-called "sixteen (16) month delay." See Day Decl. of June 16, 2005, ¶ 8. Gauge Works inadvertently produced the documents attesting to these purchases from Futurex with its reply brief on the personal jurisdictional issue. These inadvertently produced documents exposed the regular and substantial purchases made by Gauge Works from Indiana that belied Day's statement that Gauge Works' contacts with Indiana were neither systematic nor continuous. In that declaration, Day also touted the "sixteen (16) month delay" as an important factor for the Court's consideration on the issue of personal jurisdiction.

5

Continued pursuit of non-party sources, however, has exposed the sixteen (16) month delay as a subterfuge. The documents obtained from non-party Total Plastics indicate that Gauge Works obtained almost $300,000 worth of materials in regular shipments from Spartech of Warsaw, Indiana during the "sixteen (16) month delay." Additionally, Gauge Works and Greg Day were returning plastic scrap for credits during this period as well as directing the delivery of these materials through telephone calls and faxes to Indiana. Thus, *non-party* discovery supplemented with Gauge Works' begrudging production prodded by the non-party discovery has yielded evidence that Gauge Works has been continuously buying practically all of its raw material needs from Indiana from 1998 to the present.

As if this were not enough to demonstrate a need for non-party discovery on the issue of personal jurisdiction, Jennings is investigating other sources with evidence that other statements in Greg Day's declarations are wrong or misleading. In the declaration in support of his own motion to dismiss for lack of personal jurisdiction, he stated that, "To the best of my knowledge, I have never physically been in Indiana." See Day Personal Declaration, ¶ 12, (attached as Ex. 8). Within the last week, Jennings obtained evidence that Greg Day was a visitor of Auto Meter Products at the Performance Racing Industry trade show that was held in Indianapolis on December 5-7, 2002. (See Exhibitor Registration Historical, attached as Ex. 9.) Because Gauge Works and Greg Day have not been forthcoming with evidence of Mr. Day's visit to Indiana, Mr. Jennings is seeking with his subpoena on Bank of America the statements and other records for the credit cards used by Gauge Works and Mr. Day to determine the frequency and extent of their contacts with Indiana.

As may be ascertained from the records in Exhibit 1, some of the records show payments to Indiana companies, but nothing on the statement includes the Indiana address. For example,

the payment to UniRoyal Technology shows a Sarasota, Florida address, which is the location for the remittance. The materials were ordered, made, and delivered from South Bend, Indiana. Thus, Mr. Jennings needs to view unredacted credit records and investigate the locations for the companies with which Gauge Works does business. Therefore, Mr. Jennings asks this Court to allow the production of the records from the Bank of America to go forward so Mr. Jennings can uncover relevant evidence and follow up on appropriate leads for evidence related to the jurisdictional issue as well.

Because the requested discovery comports with the Federal Rules, Gauge Works and Greg Day must come forward with proof that the requested discovery is so marginally relevant as to overcome the presumption in favor of broad disclosure. "When the discovery being sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Jones v. Hamilton County Sheriff's Dept., 2003 U.S. Dist. LEXIS 10100, *8 (S.D. Ind. 2003) (Baker, J.) (attached as Ex. 12). Gauge Works has failed to meet this burden.

## II. Gauge Works And Greg Day Are Not The Proper Parties To Assert Undue Burden And Are Without Sufficient Knowledge To Make The Requisite Showing Even If They Were Proper Parties

Rule 45(c)(1) requires that "[a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on *a person subject to that subpoena.*" Fed. R. Civ. P. 45(c)(1) (emphasis added). Neither Gauge Works nor Greg Day is the person subject to the subpoena that was served by Mr. Jennings on Bank of America. Therefore, they cannot raise the issue of undue burden.

7

Bank of America did contact Mr. Jennings' counsel regarding the subpoena and did not raise any issues of undue burden or expense. If they had, Mr. Jennings' counsel would be willing to conduct an on-site, supervised inspection of the relevant documents and to copy them at his own expense. This type of cooperation, if necessary, is able to substantially reduce the burden of complying with a subpoena such that the burden is not "undue." <u>Cash Today of Texas, Inc. v. Greenberg</u>, 2002 U.S. Dist. LEXIS 20694 (D. Del. 2002) (attached as Ex. 13). In the <u>Cash Today</u> case, the bank submitted evidence of the number of files and the effort from its small staff that would be required to comply with the subpoena. In this case, Gauge Works and Greg Day have submitted no evidence regarding the number of documents or the effort to obtain them. The naked assertion of undue burden alone does not meet the requirement to present *evidence* of undue burden. As set forth in <u>Sills v. Bendix Commercial Vehicle Systems, LLC</u>, 2005 U.S. Dist. LEXIS 3392 (N.D. Ind. 2005) (attached as Ex. 14):

> Bendix offers no 'evidence' concerning the burden that will be imposed by the Request. *See* <u>Culkin v. Pitney Bowes, Inc.</u>, 225 F.R.D. 69, 71 (D. Conn. 2004) (party opposing requests for documents must demonstrate that they are burdensome or oppressive by submitting affidavits or evidence revealing the nature of the burden). Although counsel provided some information at the hearing suggesting that a burden will be imposed, we do not know the precise extent of that burden, nor has such information been properly supported by an affidavit or otherwise. In that regard, the 'totality of the circumstances," <u>Patterson v. Avery Dennison Corp.</u>, 281 F.3d 767, 681 (7th Cir. 2002), indicates that on the one hand we have relevant information relating to the Plaintiff's claim, and, on the other, unsupported assertions of burden. In weighing those two circumstances, it is clear that the truth seeking function will best be served by granting the motion.

<u>Sills</u> at *6. Gauge Works and Greg Day had a burden of proof to produce evidence of undue burden with its motion to quash. They cannot properly present such evidence with

8

the reply brief. For at least this reason, Gauge Works and Greg Day have failed to prove undue burden and the document production pursuant to the subpoena should be allowed.

Interestingly, Gauge Works and Greg Day did not cite a single case that supports the position that a party can raise an undue burden objection to a subpoena that was served on a non-party. In each of the cases the Defendants did cite the non-party that was served with the subpoena was the one to raise the objection. Mr. Jennings asks this Court not to entertain this frivolous ground for the motion to quash.

### III. All Issues Of Confidentiality Are Adequately Addressed By The Stipulated Protective Order Entered In The Underlying Case

To avoid any chance that personal or commercial confidential information would be disclosed, the subpoena that was served on Bank of America included a stipulated protective order that was entered by the court for the underlying case on February 17, 2005. (See Subpoena dated July 21, 2005, attached as Ex. 10.) This order should remedy any concerns the defendants have regarding the disclosure of personal or confidential information, if that indeed is their real basis for bringing the motion to quash. *See* Henson v. Wyeth Laboratories, Inc., 118 F.R.D. 584 (W.D. Va. 1987). To ensure the protection of this information, this Court in its order denying the motion to quash could direct Bank of America to mark all documents produced to Mr. Jennings to be marked CONFIDENTIAL in accordance with the entered protective order.

9

## CONCLUSION

Gauge Works and Greg Day have made the subpoena served on the Bank of America necessary because they allege their records are spotty and they are unable to search for all relevant documents. Mr. Jennings needs access to these records to investigate the veracity of Mr. Day's statements regarding Gauge Works' and his own contacts with Indiana. Additionally, these records have evidence regarding the design and development of the instrument cluster bezel by Mr. Day that are relevant to the issues of whether Mr. Day was an original inventor and whether the documents presented by Gauge Works and Greg Day to the PTO are genuine or crafted to further their schemes to defraud Jennings and the public. A stipulated protective order entered in the underlying case is sufficient to address any issue regarding breach of confidentiality. Finally, Gauge Works and Greg Day have failed to present any evidence of undue burden and are without standing to present any such evidence. Therefore, Mr. Jennings asks this Court to deny the motion to quash and direct Bank of America to produce all responsive documents within one week of this Court's order.

Dated: September 21, 2005

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Melanie K. Sharp_
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681 (telephone)
msharp@ycst.com

10