**EXHIBIT 11**

1998 U.S. Dist. LEXIS 23512

UNITED STATES OF AMERICA ex rel. STEPHANIE ROBERTS and LAURA FLEMING, Plaintiffs, v. QHG OF INDIANA, INC., dba LUTHERAN HOSPITAL OF INDIANA, LUTHERAN FOUNDATION, INC., (the Successor in Interest to Lutheran Hospital of Indiana, Inc. and Lutheran Health Foundation of Indiana, Inc.), IOM HEALTH SYSTEMS, L.P., TAI-MIN CHEN, M.D., and NEONATOLOGY SERVICES, P.C., Defendants.

CAUSE NO. 1:97-CV-174

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, FORT WAYNE DIVISION

1998 U.S. Dist. LEXIS 23512

October 8, 1998, Decided

**DISPOSITION-1:** Defendants' motion for protective order denied. Limits placed on discovery.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants, a hospital, a physician, and others, moved for a protective order to limit discovery requested by relators, as private citizens on behalf of the United States, in their action pursuant to the qui tam provision of the False Claims Act, 31 U.S.C.S. § 3729 et seq., to recover for fraudulent charges made to Medicaid and other insurers by the intentional mistreatment of infants for the sole purpose of increasing charges for their care.

**OVERVIEW:** Relators sued and sought production of all peer review materials and patient records related to the physician and the hospital's care of infants for a 10-year period. Defendants moved to limit discovery. The magistrate recommended denial of the motion. The peer review materials were not privileged under the Fed. R. Evid. 501 balancing test. The Indiana Peer Review Statute, Ind. Code § 34-30-15 et seq. (1998), was inapplicable because the Supremacy Clause, U.S. Const. art. VI, cl. 2, rendered it without effect to the federal law claim brought in federal court. The need for full disclosure of the peer review materials was substantial. Because the real party in interest was the United States, no showing of personal injury was required. The Health Care Quality Improvement Act of 1986, 42 U.S.C.S. § 1101 et seq, intentionally failed to recognize the peer review privilege. The medical records were not protected by the physician-patient privilege because federal courts did not recognize that privilege. However, the patient's privacy rights required the removal of identifying information. There was no proof the discovery requests were oppressive as required by Fed. R. Civ. P. 33(b)(4).

**OUTCOME:** The magistrate recommended the denial of defendants' motion for a protective order, but it placed limits on the discovery and required the relators to bear the burden for the initial discovery costs.

**CORE TERMS:** peer review, discovery, False Claims Act, disclosure, qui tam, infant, patient, medical malpractice, confidentiality, physician-patient, burdensome, anti-trust, billing, health care, protective order, identifying information, federal government, federal common law, oral argument, common law, constitutional right to privacy, full disclosure, federal law, oppressive, redacted, weigh, evidentiary privilege, claim of privilege, restraint of trade, state statute

**LexisNexis(TM) Headnotes**

*Governments > Federal Government > Claims By & Against*

[HN1]"Qui tam" is short for "qui tam pro domino rege quam pro se ipso sequitur," which in English means who brings the action as well for the king as for himself.

*Evidence > Privileges > Reports Privileged by Statute*

*Healthcare Law > Business Organization & Administration > Peer Review*

[HN2]Peer review is the process of evaluation and monitoring of qualifications and skills of physicians by their colleagues with whom they practice in a particular health care facility. The process is designed to guarantee that peer review committees have access to full and frank assessments of applicants for positions on medical staffs so as to monitor the quality, appropriateness, and necessity of the medical care given to patients. The Indiana Peer Review Statute, Ind. Code § 34-30-15 et seq. (1998), is a comprehensive statute designed to create an atmosphere amenable to effective peer review, and thus foster an effective review of, and presumably improvements to, the state's health care, by ensuring the confidentiality of peer review materials.

*Evidence > Procedural Considerations > Rule Application & Interpretation*

[HN3]See Fed. R. Evid. 501.

*Evidence > Privileges > Reports Privileged by Statute*

*Evidence > Procedural Considerations > Rule Application & Interpretation*

[HN4]Despite the language of Fed. R. Evid. 501, federal courts should, nonetheless, as a matter of comity, consider the law of the state in which the case arises, and recognize that state's evidentiary privileges where this can be accomplished at not substantial cost to federal substantive and procedural policy. Stated somewhat differently, a federal court should incorporate a state privilege only to the extent that privilege is consistent with the federal policies at issue in a case. The initial determination is whether application of the state law would be inconsistent with federal law.

*Evidence > Privileges > Reports Privileged by Statute*

[HN5]A determination on whether to recognize an evidentiary privilege requires a balancing of competing policies. First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.

*Public Contracts Law > Voiding the Contract > Misrepresentation*

[HN6]The underlying purpose of the False Claims Act, including Congress' efforts to strengthen the Act's qui tam provisions in 1986, is to provide a mechanism to combat fraud against the federal government, which has been estimated to cost the taxpayers tens to hundreds of billions of dollars per year. Therefore, if successful, a claim will vindicate the strong public policy embodied in the False Claims Act. The need for full disclosure is substantial when the evidence would support the vindication of a strong public policy interest.

*Evidence > Privileges > Reports Privileged by Statute*

*Healthcare Law > Business Organization & Administration > Peer Review*

[HN7]The majority of federal courts have consistently refused to recognize an absolute medical peer review privilege in the face of a plaintiff's critical need for

discovery of information involving the potential vindication of a strong federal interests, particularly in cases involving enforcement of the anti-trust and anti-discrimination laws.

*Evidence > Privileges > Reports Privileged by Statute*

*Healthcare Law > Business Organization & Administration > Peer Review*

[HN8]A balance must be struck between a plaintiff's needs for disclosure and the defendant's need to protect confidentiality, and that where a plaintiff's claim arises out of the peer review proceeding itself, and has a significant impact upon the plaintiff's ability to present his case, the same is discoverable.

*Evidence > Privileges > Reports Privileged by Statute*

*Healthcare Law > Business Organization & Administration > Peer Review*

[HN9]The peer review privilege is not grounded in the common law. When the adequacy of the peer review investigation itself gives rise to a federal claim, and if recognizing the peer review privilege would impede the vindication of an important federal substantive right, the Fed. R. Evid. 501 balancing test weighs in favor of disclosure.

*Governments > Federal Government > Claims By & Against*

*Civil Procedure > Justiciability > Standing*

[HN10]Qui tam suits by definition involve suits brought by private parties to assist the executive branch in its enforcement of the law, the violation of which affects the interest of the government, not the individual relator, whose only motivation in bringing suit is to recover a piece of the action given by the statute. So when a legislative body enacts provisions enabling qui tam actions, that act carries with it an understanding that in such suits it is the government, not the individual relator, who has suffered the injury resulting from the violation of the underlying law and is therefore the real plaintiff in the action.

*Governments > Federal Government > Claims By & Against*

*Civil Procedure > Justiciability > Standing*

[HN11]In usual governmental lawsuits no one would question whether the Assistant United States Attorney prosecuting the government's case has suffered an injury-in-fact. That Congress should enlist a private party, instead of one of the government's more common representatives, to champion the government's case should not change the outcome. Nor, for that matter, should it be necessary for the private qui tam relator to demonstrate a "personal

stake" in the outcome of the dispute any more than it would be necessary for an Assistant United States Attorney to prove that he has a personal stake in the outcome of the case. Requiring an additional showing of injury on the part of the qui tam relator would be an analytical redundancy.

*Civil Procedure > Justiciability > Standing*

*Governments > Federal Government > Claims By & Against*

[HN12]Congress establishes qui tam provisions for the very purpose of enlisting private parties to champion the government's case.

*Evidence > Privileges > Reports Privileged by Statute*

*Healthcare Law > Business Organization & Administration > Peer Review*

[HN13]A close comparison of the Indiana Peer Review Statute and the Health Care Quality Improvement Act of 1986 (HCQIA), 42 U.S.C.S. § 1101 et seq., reveals that the statutes in fact take totally distinct approaches to the peer review privilege. The Indiana Peer Review Statute creates a complete and unambiguous evidentiary privilege. Ind. Code § 34-30-35-9 , -10 (1998). In contrast, the HCQIA does not establish such a broad based peer review privilege. Indeed, Congress, in enacting the HCQIA not only considered the importance of maintaining the confidentiality of the peer review process, but took the action it believed would best balance protecting confidentiality with other important interests. Congress spoke loudly with its silence in not including a privilege against discovery of peer review materials in the HCQIA.

*Evidence > Privileges > Reports Privileged by Statute*

*Healthcare Law > Business Organization & Administration > Peer Review*

[HN14]Courts should be especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself, which, given the fact that Congress enacted the Health Care Quality Improvement Act of 1986 (HCQIA), 42 U.S.C.S. § 1101 et seq., without a broad peer review provision, compels the conclusion that the courts are not free to recognize such a privilege in that statute.

*Evidence > Privileges > Reports Privileged by Statute*

*Healthcare Law > Business Organization & Administration > Peer Review*

[HN15]The Health Care Quality Improvement Act of 1986 (HCQIA), 42 U.S.C.S. § 1101 et seq., establishes a national clearinghouse of reports of professional review actions which adversely affect the clinical

privileges or status of physicians, 42 U.S.C.S. § 11133, reports of sanctions taken by boards of medical examiners, 42 U.S.C.S. § 11132, and reports of medical malpractice payments, 42 U.S.C.S. § 11131. Hospitals have a duty to obtain this information on a regular basis concerning any physician or licensed health care practitioner for whom they have granted clinical privileges, 42 U.S.C.S. § 11135, and such information is also available to other health care entities and licensing boards. In order to provide incentive and protection for physicians engaging in effective professional peer review, 42 U.S.C.S. § 11101. The HCQIA accords limited liability immunity to professional review bodies, their members and staff. 42 U.S.C.S. §§ 11101; 11111.

*Evidence > Privileges > Reports Privileged by Statute*

*Constitutional Law > Supremacy Clause*

[HN16]The Supremacy Clause, U.S. Const. art. VI, cl. 2, renders the Indiana Access to Medical Records Act, Ind. Code 16-39 et seq., "void and of no effect" to the extent that it can be construed to exclude evidence relevant to a claim based on federal law brought in federal court.

*Evidence > Privileges > Doctor-Patient Privilege*

[HN17]Federal courts do not recognize a physician-patient privilege.

*Healthcare Law > Business Organization & Administration > Patient Confidentiality*

[HN18]There is a constitutionally protected zone of privacy in avoiding disclosure of personal matters. However, this right is a limited one, subject it appears, to a balancing test comparing the individual's interest in confidentiality to the public's interest in disclosure. However, the privacy interests of a patient in his or her medical records is tied to identity information contained in the records. Once the identifying information is removed from the record, the patient's privacy interest is essentially eliminated.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN19]See Fed. R. Civ. P. 26(b)(1).

*Governments > Courts > Rule Application & Interpretation*

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN20]Courts are to construe the language of Fed. R. Civ. P. 26(b)(1) liberally to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.

1998 U.S. Dist. LEXIS 23512

*Civil Procedure > Disclosure & Discovery > Protective Orders*

*Evidence > Procedural Considerations > Burdens of Proof*

[HN21]The party objecting to the discovery must state the grounds for the objection with specificity; the mere recitation that a document discovery request is overly broad, burdensome, oppressive, and irrelevant will not suffice. Fed. R. Civ. P. 33(b)(4). When a discovery objection has been properly articulated, the party seeking discovery must demonstrate that the request lies within the bounds of Fed. R. Civ. P. 26. If this showing is made, the party opposing discovery has the burden of showing that the discovery should not be had.

*Governments > Legislation > Statutes of Limitations > Time Limitations*

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN22]The fact that matters with respect to which discovery is sought may be time-barred by the applicable statute of limitations does not foreclose discovery, particularly because an act beyond the period of limitations may constitute relevant background evidence in a proceeding in which a current practice is at issue.

*Civil Procedure > Disclosure & Discovery > Undue Burden*

*Evidence > Procedural Considerations > Burdens of Proof*

[HN23]A party seeking to avoid discovery on a burdensome argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden.

*Civil Procedure > Costs & Attorney Fees > Litigation Costs*

[HN24]The initial costs, which concern discovery in a federal court case asserting federal claims, are not controlled or set by any state statute. Rather, these costs should reflect the reasonable costs associated with the production and redaction of the documents.

**COUNSEL:** [*1] For TOWE, JERRY M, plaintiff: STEPHANIE J HAHN, KENDALL LAW OFFICE, INDIANAPOLIS, IN.

For INDIANA RAILROAD COMPANY, INC., defendant: PAMELA V KELLER, ICE MILLER, INDIANAPOLIS, IN.

**JUDGES:** Roger B. Cosbey, United States Magistrate Judge.

**OPINIONBY:** Roger B. Cosbey

**OPINION: MEMORANDUM OF DECISION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on the Motion for Protective Order filed on August 6, 1998, by Defendants QHC of Indiana, Inc., and IOM Health Systems, L.P. (collectively "QHC"). Defendants Tai-Min Chen, M.D. ("Dr. Chen") and Neonotalogy Services, P.C. (collectively "Chen") filed a motion to join in QHC's motion on August 6, 1998, which the Court granted on September 10, 1998. Plaintiffs, Stephanie Roberts and Laura Leaming, ("the Relators") filed responses to Chen's motion and QHC's motion on August 17 and August 18, 1998, respectively. QHC and Chen filed their replies on August 31, 1998, oral argument was held on the motions on September 22, 1998, and the motions are ripe for review. For the reasons hereinafter provided, the motions will be DENIED, although the Court will nevertheless place some limits on the discovery sought by the Relators.

**II. BACKGROUND [*2] n1**

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n1 The activities alleged in the complaint implicate the care Dr. Chen provided to infants during his employment in Lutheran Hospital's Neonatal Intensive Care Unit ("NICU"). In the interests of clarity, the Court shall refer to "the hospital" or "Lutheran" rather than the various named corporate defendants in discussing the background facts.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

The Relators, as private citizens on behalf of the United States, have brought this action pursuant to the *qui tam* n2 provision of the False Claims Act, 31 U.S.C. § 3729 *et seq.* To vastly oversimplify, the Relators allege that Dr. Chen intentionally treated infants in such a manner to cause the infants to remain in the NICU longer than necessary, so as to enable him and the hospital to bill third party insurers, including Medicaid, for greater amounts than they would have they would have billed had Dr. Chen provided the infants with proper care. Put another way, the Relators allege that the Defendants intentionally mistreated

infants [*3] for the purpose of defrauding the United States government.

------------- Footnotes ---------

------

n2 [HN1]*"Qui tam"* is short for "qui tam pro domino rege quama pro se impose sequitur," which in English means "who brings the action as well for the king as for himself." *United States ex rel. Hall v. Tribal Development Corp.,* 49 F.3d 1208, 1210 n.2 (7th Cir. 1994)(citations omitted).

----------- End Footnotes--------

------

The Defendants' motion for a protective order is directed at certain discovery sought by the Relators, including, *inter alia* billing records from the NICU for the last ten years; the complete medical records of infants treated by the NICU from 1991 to the present; complaints received by the hospital regarding Dr. Chen; the minutes from meetings of various hospital committees; and information pertaining to all infants treated by Dr. Chen during his employ at Lutheran. In essence, the discovery objected to by the Defendants falls into two categories: materials that arguably inquire into Lutheran's process of evaluating and monitoring the qualifications [*4] and skills of Dr. Chen (i.e., materials relating to the complaints pertaining to Dr. Chen); and materials that consist of the medical records of non-parties. The Defendants contend that the former are not discoverable because they are privileged under the principles embodied in Indiana's "Peer Review Statute," *Ind. Code. § 34-30-15-1 et seq,* n3 and that the latter are not discoverable under both Indiana substantive law and a constitutional right to privacy in medical records.

------------- Footnotes ---------

------

n3 [HN2]Peer review is the process of evaluation and monitoring of qualifications and skills of physicians by their colleagues with whom they practice in a particular health care facility. *See generally Walton v. Jennings Community Hospital, Inc., 875 F.2d 1317, 1322 (7th Cir. 1989); Marrese v. Interqual, Inc., 748 F.2d 373, 387 (7th Cir. 1984);* Jeanne Darricades, Comment, *Medical Peer Review; How is it Protected By the Health Care Quality Improvement Act of 1986?,* 18 J. CONTEMP. L. 263, 270 (1992). The process is designed to guarantee that peer review committees have access to full and frank assessments of applicants for positions on medical staffs so as to monitor the quality, appropriateness, and necessity of the medical care given to patients. The Indiana Peer Review Statute is a comprehensive statute designed to create an atmosphere amenable to effective peer review, and thus foster an effective review of (and presumably improvements to) the state's health care, by ensuring the confidentiality of peer review materials. *See Mulder v. Vankersen, 637 N.E.2d 1335, 1338 (Ind. Ct. App. 1994).*

As noted by QHG, the Indiana Peer Review Statute was recently amended and recodified. Given the Court's disposition of the privilege issue, we need not determine which version of the statute is applicable in this case, and we shall refer to the statute in its present codification, Ind. Code § 34-30-15 et seq. (1998).

----------- End Footnotes--------

------

[*5]

## III. DISCUSSION

### A. Peer Review Materials

The Defendants correctly assert that Indiana's Peer Review Statute intends that peer review material be kept confidential, and that disclosure of such information be prohibited. *See Ind. Code § 34-30-15-10.* Indeed, the Defendants contend that "the statute is clear and unambiguous in its prohibition against the disclosure of the content of communications to, or the determination of, a peer review committee." QHC Br. is Supp. at 7. However, the Relators' complaint asserts federal claims under the False Claims Act, and therefore *Fed. R. Evid. 501,* and not state statutory law, supplies the framework for addressing the Defendants' claim of privilege as to the peer review materials. *See Patterson v. Caterpillar, Inc., 70 F.3d 503, 506 (7th Cir. 1995)* (citation omitted); *Memorial Hospital for McHenry County v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981). Fed. R. Evid. 501* provides in pertinent part:
[HN3]Except as otherwise required by the Constitution of the United States or provided by Act [*6] of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof, shall be governed by the principles of common law as they may be interpreted by the

courts of the United States in the light of reason and experience.

[HN4]Nevertheless, federal courts should, as a matter of comity, consider the law of the state in which the case arises, and recognize that state's evidentiary privileges "where this can be accomplished at not substantial cost to federal substantive and procedural policy." _Memorial Hospital, 664 F.3d at 1061_ (citation omitted). Stated somewhat differently, a federal court should incorporate a state privilege only to the extent that privilege is consistent with the federal policies at issue in a case. _See Syposs v. United States, 179 F.R.D. 406, 408_ (W.D.N.Y. 1998 (citing _Wei v. Bodner, 127 F.R.D. 91, 94-95 (D.N.J. 1989)); Pagano v. Oroville Hospital, 145 F.R.D. 683, 688 (E.D. Cal. 1993)_ ("The initial determination is whether application of the state law would be inconsistent with federal law. [*7] "). Therefore, we shall proceed with the relevant inquiry: whether the medical peer review privilege principles established by the Indiana Legislature are inconsistent with federal law. According to the Hospital, Indiana's peer review privilege is consistent with past decisions of this Court, as well as federal statute. We disagree.

_1. Federal Common Law_

[HN5]"A determination on whether to recognize an evidentiary privilege requires a balancing of competing policies." _EEOC v. University of Notre Dame Du Lac, 715 F.2d 331, 335 (7th Cir. 1983)_. "First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." _Memorial Hospital, 664 F.2d at 1061_ (citing _United States v. Nixon, 418 U.S. 683, 710, 94 S. Ct. 3090, 3108, 41 L. Ed. 2d 1039 (1974))_. _Accord Jaffee v. Redmond, 518 U.S. 1, 9, 116 S. Ct. 1923, 1928, 135 L. Ed. 2d 337 (1996); University of Pennsylvania v. EEOC, 493 U.S. 182, 189, 110 S. Ct. 577, 582, 107 L. Ed. 2d 571 (1990)_. "Second, in deciding whether the privilege [*8] asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises." _Memorial Hospital, 664 F.2d at 1061_. "The court should 'weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.'" _Id. at 1061-62_ (quoting _Ryan v. Commissioner of Internal Revenue, 568 F.2d 531, 543 (7th Cir. 1977), cert. denied, 439 U.S. 820, 58 L. Ed. 2d 111, 99 S. Ct. 84 (1978))_.

Applying these principles to the facts of the instant case, it is clear that the need for full disclosure of the relevant evidence to the trier of fact is particularly substantial in this case. As mentioned _supra_, the Relators allege that Dr. Chen and the hospital knowingly defrauded the federal government. [HN6]The underlying purpose of False Claims Act, including Congress's efforts to strengthen the Act's _qui tam_ provisions in 1986, is to provide a mechanism to combat fraud against the federal government, which has been [*9] estimated to cost the taxpayers tens to hundreds of billions of dollars per year. _See_ S. REP. No. 99-345, at 2-3 (1986), _reprinted in_ 1986 U.S.C.C.A.N. 5266, at 5267-68. Therefore, if successful, the Relators would vindicate the strong public policy embodied in the False Claims Act. _See Memorial Hospital, 664 F.2d at 1062_ (need for full disclosure is substantial when the evidence would support the vindication of a strong public policy interest).

Moreover, the information contained in the peer review materials sought by the Relators appears to represent the only source of evidence from which the Relators can establish actual knowledge on the part of the Defendants, an element of proof required by the False Claims Act. _See 31 U.S.C. §§ 3729(a), (b)_. In other words, if the Relators were unable to access this information, they may very well be prevented from proving their False Claims Act fraud claims. Such an outcome would, for all intents and purposes, effectively grant immunity to these Defendants and all similarly situated health care providers who become subject to fraud allegations brought pursuant to the False Claims Act.

The [*10] Seventh Circuit found this circumstance dispositive in _Memorial Hospital_, where it distinguished the plaintiff's need there to prove a restraint of trade from what the plaintiff was seeking to prove in _Bredice v. Doctors Hospital, 50 F.R.D. 249 (D.D.C. 1970), aff'd 156 U.S. App. D.C. 199, 479 F.2d 920 (D.C. Cir. 1973)_, a medical malpractice claim. The Seventh Circuit explained that the critical issue in a medical malpractice claim is the degree of care employed by the physician, and agreed with the _Bredice_ court that subsequent peer review comments are not relevant to that determination, but even more importantly, the court recognized that medical malpractice claimants remain able to prove their cases using other evidence. _Memorial Hospital, 664 F.2d at 1062_. In contradistinction, in _Memorial Hospital_ the Seventh Circuit noted that the plaintiff's restraint of trade claim arose out of the peer review proceedings themselves, and not some event independent of those proceedings. _Id. at 1062-63_. Furthermore, the Seventh Circuit pointed out that such restraint of trade evidence, if it existed, would likely be [*11] found in the peer review materials. _Id. at 1063; see also University of Pennsylvania, 493 U.S. at 193, 110 S. Ct._

at 584 ("Indeed, if there is a 'smoking gun' to be found ... it is likely to be in the peer review files."). Therefore, the Seventh Circuit held that the need for discovery of information going to the heart of the issues in the case required disclosure. *Id.*

*Memorial Hospital* is in line with the vast majority of federal courts which have not only addressed this issue, but which [HN7]have consistently refused to recognize an absolute medical peer review privilege in the face of a plaintiff's critical need for discovery of information involving the potential vindication of a strong federal interests, particularly in cases involving enforcement of the anti-trust and anti-discrimination laws. *See Holland v. Muscatine General Hospital, 971 F. Supp. 385 (S.D. Iowa 1997)* (disclosure required because the plaintiffs need to prove that the hospital knew or should have known of a Title VII hostile environment, and that this placed the adequacy of the peer review investigation itself in issue) (citing *Memorial Hospital, 664 F.2d at 1062-63*); [*12] *Price v. Howard County General Hospital, 950 F. Supp. 141, 144 n.3 (D. Md. 1996)* (recognizing that in the anti-trust context, allegations of misconduct in the medical peer review process could only be discovered through access to the peer review materials); *Johnson v. Nyack Hospital, 169 F.R.D. 550, 558 n.12 (S.D.N.Y. 1996)* (collecting cases in which the federal interests in discovery in federal question cases outweighed the need for confidentiality of peer review records); *Pagano, 145 F.R.D. at 690-92* (disclosure of peer review materials was required when the peer review itself is under attack) (anti-trust case); *Dorsten v. Lapeer County General Hospital, 88 F.R.D. 583, 586 (E.D. Mich. 1980)* ("it is difficult to perceive how any Plaintiff can be expected to argue and prove [an anti-trust and sex discrimination] case without access to the [peer review materials"); *Robinson v. Magovern, 83 F.R.D. 79, 89 (W.D. Pa. 1979)* (disclosure of peer review information required because it went to the heart of the issues in the plaintiff's anti-trust claims). At bottom, the importance of the federal interest [*13] at issue in this case, combined with the important, if not penultimate, role the peer review evidence plays in proving the Relators' claims, weighs heavily on the side of full disclosure, an interest which is inconsistent with the Hospital's claim of privilege under state law.

Nevertheless, the Hospital argues that this Court, in interpreting *Memorial Hospital,* has recognized the privilege created by Indiana's Peer Review Statute. Specifically, the Hospital argues that this Court ruled in its previous decisions of *Doe v. St. Joseph's Hospital of Fort Wayne, 113 F.R.D. 677 (N.D. Ind. 1987),* and *Schafer v. Parkview Memorial Hospital Inc., 593 F. Supp. 61 (N.D. Ind. 1984),* that when peer review materials are sought *"qua"* peer review, that is, for the purpose of obtaining information as to the quality of a physician's care, they are protected from disclosure by the Indiana Peer Review Statute. According to the Hospital, the Relators seek peer review information relating to Chen *qua* peer review, and therefore the state statute prevents this discovery.

However, the Hospital's purported "peer review *qua* peer review" rule appears to be merely [*14] another way of articulating the general holding of *Memorial Hospital,* that [HN8]a balance must be struck between a plaintiff's needs for disclosure and the defendant's need to protect confidentiality, and that where a plaintiff's claim arises out of the peer review proceeding itself, and has a significant impact upon the plaintiff's ability to present his case, the same is discoverable. *Schafer, 593 F. Supp. at 64* (citing *Memorial Hospital, 664 F.2d at 1062*). n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n4 This Court's decision in *Doe v. St. Joeseph's Hospital,* a Title VII case, is not to the contrary. Judge Sharp recognized the general rule that "the need for truth in cases which allege that the communications to, records of or determinations of the peer review committee illustrate discrimination outweighs the right to an absolute privilege," *id. at 680,* but nevertheless upheld the Defendant hospital's peer review privilege defense to a motion to compel discovery because the plaintiff had failed to allege facts from which even an inference of workplace discrimination could arise. *Id.; cf. Brem v. Decarlo, Lyon, Hearn & Pazourek, P.A., 162 F.R.D. 94, 102 (D. Md. 1995)* (upholding peer review privilege in defamation case, in part because the requested information could be obtained through means other than the peer review materials). In contradistinction, the Relators competently allege facts sufficient to support their False Claims Act claims, and furthermore contend, without serious objection by the Defendants, that the peer review materials represent the only evidence which could illustrate the Defendants' intent to defraud the federal government.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

[*15]

As demonstrated by the cases cited *supra*, this rule has been applied with rather bright-line results. The privilege appears to survive in medical malpractice cases, where the critical issue is not what occurred during the peer review meetings, and where the plaintiff has other means of obtaining evidence demonstrating that the defendant physician was negligent. *E.g., Bredice,* 50 F.R.D. at 250. On the other hand, disclosure is consistently required in discrimination and anti-trust cases, where the substance of the peer review meetings, and not a physician's standard of care, is at issue. *E.g., Memorial Hospital,* 664 F.2d at 1062-63. Neither the parties nor the Court have located a case where the medical peer review privilege has been applied under the False Claims Act, thus making this a question of first impression. n5

- - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n5 The Court's research has uncovered one case in which the "self-critical analysis" privilege, which is analogous to the peer review privilege, was invoked to preclude discovery in a *qui ram* False Claims Act case. In *United States ex rel. Falsetti v. Southern Bell Telephone and Telegraph Co.,* 915 F. Supp. 308 (N.D. Fla. 1996), the district court, relying upon the Supreme Court's admonition in *University of Pennsylvania* that federal courts should be reluctant to recognize a privilege "in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself," *University of Pennsylvania,* 493 U.S. at 189, 110 S. Ct. at 582 (citation omitted), reviewed the text and associated legislative history of the 1986 amendments to the False Claims Act, and concluded that Congress created only a safe-haven exception for those persons who uncovered past fraud violations, but that this was not a self-critical analysis exception to liability. *Falsetti,* 915 F. Supp. at 311-13 (citing 31 U.S.C. §§ 3729(a)(1-7)(A-C)). Therefore, the district court found that because Congress had considered the relevant competing interests, and had not created an explicit self-critical analysis privilege, such a privilege did not exist in a *qui tam* action under the False Claims Act. *Id.* at 313. While not on all fours with this case, *Falsetti* supports our final conclusion that there is not a peer review privilege.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*16]

The Relators' claims appear to be a hybrid of these two paradigms, combining elements of both of the typical cases in which the peer review privilege is raised. First, the Relators must show that Dr. Chen's care was substandard, as in a traditional medical malpractice case. Then, the Relators must prove that Dr. Chen, in concert with the Hospital, knew that Dr. Chen's care led to a fraudulent overbilling of Medicaid which was condoned or supported. Evidence on this latter point really pertains to the substance of the peer review meetings, rather than Dr. Chen's standard of care, and may only be found, as in a discrimination or anti-trust case, in the peer review materials. Tellingly, the Relators' complaint specifically states that this action is not being brought as a medical malpractice case, but as an action to uncover fraud under the False Claims Act. *See* Third Amend. Compl. Rhet. P 1. Therefore, while the degree of care employed by Dr. Chen will certainly be one facet of the Relators' case-in-chief, the gravamen of the Relators' case focuses on the intentional and knowing actions taken by the Defendants to defraud the federal government. More importantly, the evidence supporting [*17] the Relators' claims, if any is discovered, will presumably only appear in the peer review materials. Therefore, the unique facts of this case, when analyzed using the federal common law rule established in *Memorial Hospital,* leads to the conclusion that there is no peer review privilege, and that these materials must be disclosed.

This conclusion is bolstered by the Supreme Court's rejection of the peer review privilege under the common law in its *University of Pennsylvania* decision, which post-dates *Memorial Hospital, Schafer,* and *Doe.* n6 In that case, the EEOC subpoenaed the tenure review files of a woman denied tenure who had sued the university under Title VII. The university argued that the tenure review materials were confidential peer review materials, and thus protected by common law privilege. The Supreme Court rejected this argument, first noting that Congress had considered, and rejected, such a privilege when it enacted Title VII. *University of Pennsylvania,* 493 U.S. at 189-193, 110 S. Ct. at 582-84; *see* note 5 *supra.* The Court further held that such a peer review privilege had no historical or statutory basis, *University of Pennsylvania,* 493 U.S. at 195, 110 S. Ct. at 585, [*18] and found it significant that the peer review materials would be necessary to determine the ultimate question raised in the case: whether illegal discrimination had taken place. *Id.* at 193, 110 S. Ct. at 584.

1998 U.S. Dist. LEXIS 23512

n6 Although *University of Pennsylvania* dealt with academic, rather than medical, peer review materials, there seems to be no reason why this Court should not apply the Supreme Court's holding to this case. *See Syposs, 179 F.R.D. at 411-12* (finding *University of Pennsylvania* persuasive authority in assessing a claim for a medical peer review privilege); *Johnson, 169 F.R.D. at 559-60* (same); *Robertson v. Neuromedical Center, 169 F.R.D. 80, 83 (M.D. La. 1996)* (same). Curiously, this apparently relevant precedent was not cited by any party in their briefs.

- - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

Clearly, then, *University of Pennsylvania* reaffirms the Seventh Circuit's holding in *Memorial Hospital* that [HN9]the peer review privilege is not grounded in the common law. [*19] Indeed, later decisions have relied upon both *University of Pennsylvania* and *Memorial Hospital* in finding that when the adequacy of the peer review investigation itself gives rise to a federal claim, and if recognizing the peer review privilege would impede the vindication of an important federal substantive right, the *Rule 501* balancing test weighs in favor of disclosure. *See Holland 971 F. Supp. at 390; Johnson, 169 F.R.D. at 558 n.12, 559; Pagano, 145 F.R.D. at 690-92; Teasdale v. Marin General Hospital, 138 F.R.D. 696, 698-99 (N.D. Cal. 1991).*

Against this rather involved backdrop, the Hospital acknowledges that *Memorial Hospital* controls this motion, and accepts the general rule that state privileges do not prevent disclosure when the information at issue is necessary to a plaintiff's federal case. However, the Hospital contends that the Relators' unique posture as *qui tam* plaintiffs should lead the Court to conclude that the *Rule 501* balancing inquiry weighs against full disclosure and in favor of recognizing Indiana's peer review privilege. Specifically, the Defendants contend that the Relators [*20] have suffered no redressable injury under the False Claims Act, and that the federal government and the neonatal infants themselves have remedies to compensate for any wrongdoing by the Defendants, all of which leads to the conclusion that the Relator's need for the peer review materials is not outweighed by the peer review privilege. This argument verges on a non sequitur, and miscomprehends both the nature of *qui tam* suits in general, as well as the specific claims advanced by the Relators.

First, the fact that the Relators have not suffered an injury-in-fact is irrelevant to their efforts to prove the merits of their case. As the Seventh Circuit has explained:

> [HN10]*Qui tam* suits by definition involve suits brought by private parties to assist the executive branch in its enforcement of the law, the violation of which affects the interest of the government, not the individual relator, whose only motivation in bringing suit is to recover a piece of the action given by the statute. So when a legislative body enacts provisions enabling *qui tam* actions, that act carries with it an understanding that in such suits it is the government, not the individual relator, who has [*21] suffered the injury resulting from the violation of the underlying law and is therefore the real plaintiff in the action.

*United States ex re. Hall v. Tribal Development Corp., 49 F.3d 1208, 1212 (7th Cir. 1995).* The court continued:

> [HN11]In [usual governmental lawsuits] no one would question whether the Assistant United States Attorney prosecuting the government's case has suffered an injury-in-fact ... That Congress should enlist a private party, instead of one of the government's more common representatives, to champion the government's case should not change the outcome. Nor, for that matter, should it be necessary for the private *qui tam* relator to demonstrate a "personal stake" in the outcome of the dispute any more than it would be necessary for an Assistant United States Attorney to prove that he has a personal stake in the outcome of the case ... Requiring an additional showing of injury on the part of the *qui tam* relator would be an analytical redundancy.

*Id.* at 1213-14; see also *United States ex rel. Kelly v. Boeing Co., 9 F.3d 743, 749 (9th Cir. 1993)* (False Claims Act case); *United States ex rel. Fallon v. Accudyne Corp., 921 F. Supp. 611, 622-63 (W.D. Wisc. 1995)* [*22] (same). Therefore, the Hospital's contention that the Relators have not suffered an injury-in-fact has nothing to do with need or ability of the Relators to obtain discovery so as to prosecute this case.

This point dovetails into the Hospital's second argument, that the Relators do not have a compelling interest in the peer review materials because at this point in the litigation the government retains the power to later intervene in the case, or to proceed administratively. *See* 31 U.S.C. § 3730(c)(2). This argument is untenable, however, because it fails to take into account the fact that [HN12]Congress establishes *qui tam* provisions for the very purpose of "enlisting private parties ... to champion the government's case." *Hall,* 49 F.3d at 1213; *see also Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 941, 117 S. Ct. 1871, 1874, 138 L. Ed. 2d 135 (1997) ("The *qui tam* provision of the False Claims Act ..., 31 U.S.C. § 3730(b), permits, in certain circumstances, suits by private parties on behalf of the United States against anyone submitting a false claim to the Government. [*23] "); 31 U.S.C. § 3730(c)(3) ("If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action."). Accepting the Hospital's argument would seriously weaken the *qui tam* provision of the False Claims Act because no relator would be able to maintain a private lawsuit, much less "champion the government's case," if he or she were denied access to crucial discovery merely because the government might later intervene in the action. That is, the Relators should not be skipped of the power to fully prosecute this lawsuit merely because Congress has allowed the government certain powers over *qui tam* suits.

Finally, the Hospital argues that the Relators do not have a compelling interest in the peer review materials because the neonates who were allegedly harmed by Dr. Chen's conduct have other remedies for redressing such alleged wrongs, namely, medical malpractice actions. This contention is misplaced, however, because the neonates are not parties to this litigation. Indeed, the Third Amended Complaint emphasizes that this is not a medical malpractice action at all, but rather one to [*24] recover for fraud under the False Claims Act. *See* Third Amended Compl. Rhet. P 1. In sum, the Defendants' attempts to distinguish this case based upon its unique *qui tam* status are unavailing. Moreover, Indiana's peer review statute is inconsistent with federal common law, in that the Relator's need for the peer review materials to prove their case, and thus vindicate an important federal interest, clearly outweighs the Hospital's claim of privilege under Rule 501.

## 2. Health Care Quality Improvement Act of 1986

The Hospital also argues that the principles embodied in Indiana's medical peer review privilege are "clearly aligned with federal concerns," because Congress federalized the concept of a medical peer review privilege with the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 1101 et seq. ("HCQIA"). n7 However, [HN13]a close comparison of the Indiana Peer Review Statute and the HCQIA reveals that the statutes in fact take totally distinct approaches to the peer review privilege. As noted *supra,* the Indiana Peer Review Statute creates a complete and unambiguous evidentiary privilege. *See* Ind. Code § 34-30-35-9 [*25] , -10 (1998). In contrast, the HCQIA does not establish such a broad peer review privilege. Indeed, courts which have analyzed the question have uniformly found that Congress, in enacting the HCQIA:

> not only considered the importance of maintaining the confidentiality of the peer review process, but took the action it believed would best balance protecting confidentiality with other important interests. Congress spoke loudly with its silence in not including a privilege against discovery of peer review materials in the HCQIA.

*Johnson,* 169 F.R.D. at 560 (quoting *Teasdale v. Marin General Hospital,* 138 F.R.D. 691, 694 (N.D. Cal. 1991)); *see also Syposs,* 179 F.R.D. at 410 (citing *Robertson,* 169 F.R.D. at 84); *Pagano,* 145 F.R.D. at 694. Moreover, we must keep in mind the Supreme Court's admonition that [HN14]courts should be "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself," *University of Pennsylvania,* 493 U.S. at 189, 110 S. Ct. at 582, which, [*26] given the fact that Congress enacted the HCQIA without a broad peer review provision, compels the conclusion that this Court is not free to recognize such a privilege in that statute. *See Johnson,* 169 F.R.D. at 561; *Robertson,* 169 F.R.D. at 84 ("The absence of such a [peer review] privilege in [the HCQIA] is evidence that Congress did not intend these records to have the level of confidentiality and protection advanced by the hospitals and provided by the state statute."); *Pagano,* 145 F.R.D. at 695. At bottom, then, the medical peer review privilege contained in the Indiana Peer Review Statute is inconsistent with federal common law, and is quite dissimilar from the HCQIA. Therefore, the authority of *University of Pennsylvania* and *Memorial Hospital* dictates that the Hospital's motion for a protective order must be denied as to the medical peer review materials.

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n7 As detailed in *Pagano:*

1998 U.S. Dist. LEXIS 23512

The HCQIA is set forth as Chapter 117 of the Public Health and Welfare Code, entitled "Encouraging Good Faith Professional Review Activities." It is based, *inter alia*, on Congressional findings that a nationwide medical malpractice problem can be remedied through concerted professional peer review activities aimed at "restricting the ability of incompetent physicians to move from State to State." 42 U.S.C. § 11101. [HN15]The Act establishes a national clearinghouse of reports of professional review actions which adversely affect the clinical privileges or status of physicians)(*Id.,* § 11133), reports of sanctions taken by boards of medical examiners (§ 11132), and reports of medical malpractice payments (§ 11131). Hospitals have a duty to obtain this information on a regular basis concerning any physician or licensed health care practitioner for whom they have granted clinical privileges (§ 11135), and such information is also available to other health care entities and licensing boards. In order to "provide incentive and protection for physicians engaging in effective professional peer review," (§ 11101) the Act accords limited liability immunity to professional review bodies, their members and staff. (§§ 11101, 11111).



*Pagano,* 145 F.R.D. at 693.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

[*27]

**B. Access to Third Party Medical Records**

All of the Defendants argue that the Relators are not entitled to obtain the medical records of other children treated by Dr. Chen under the "Indiana Access to Medical Records Act," Ind. Code 16-39 *et seq.,* the physician-patient privilege, and because production of the records would intrude on a right to privacy under the United States Constitution. n8 The state statutory argument need not detain us long, for [HN16]the Supremacy Clause of the United States Constitution renders the Indiana Access to Medical Records Act "void and of no effect" to the extent that it can be construed to exclude evidence relevant to a claim based on federal law brought in federal court. *Memorial Hospital,* 664 F.2d at 1063; U.S. CONST. Art. VI, cl. 2 (federal law "shall be the supreme Law of

the Land."). The Defendants' reliance upon the physician-patient privilege is similarly misplaced, since [HN17]federal courts do not recognize a physician-patient privilege. See *Whalen v. Roe,* 429 U.S. 589, 602 n.28, 97 S. Ct. 869, 877 n.28, 51 L. Ed. 2d 64 (1977) ("The physician-patient evidentiary privilege is unknown [*28] to the common law."); *Patterson,* 70 F.3d at 506-07 ("federal common law does not recognize a physician-patient privilege"); *Mann v. University of Cincinnati,* 152 F.R.D. 119, 120 n.1 (S.D. Ohio 1993), aff'd in relevant part, 114 F.3d 1188, **3-**4 (6th Cir. 1997)(Table)("We note our disagreement with the Magistrate Judge's interpretation of the law in this circuit with respect to the Doctor-Patient privilege."). n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 The Relators appear to concede that the Defendants have standing to raise the constitutional right to privacy of the patients. See *Pesce v. J. Sterling Morton High School, District 201, Cook County, IL,* 830 F.2d 789, 797 (7th Cir. 1987) (collecting *cases*).

n9 All Defendants appear to have relied upon Magistrate Judge Steinberg's opinion in *Mann v. University of Cincinnati,* 824 F. Supp. 1190 (S.D. Ohio 1993), to support two propositions: first, that the third party medical records are protected by the physician-patient privilege, and second, that a constitutional right to privacy precludes disclosure of those records. However, no party favored the Court, in their briefs or at oral argument, with District Judge Spiegel's opinion reversing the Magistrate Judge's ruling on the privilege issue, as cited above, or with the Sixth Circuit's opinion reversing the Magistrate Judge and District Judge on the constitutional privacy right issue, which we shall discuss *infra. See* 114 F.3d 1188 at **3 (Table) (holding the Sixth Circuit has consistently rejected claims that medical records are of such a private and personal nature that they enjoy constitutional protection), *Id.* at **4 ("federal courts do not recognize a federal physician-patient privilege")(citing, *inter alia, Patterson,* 70 F.3d at 506-07).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

[*29]

Turning to the constitutional inquiry, the Supreme Court has recognized that [HN18]there is a constitutionally protected zone of privacy in avoiding disclosure of personal matters. *Whalen*, 429 U.S. at 599-600, 97 S. Ct. at 876. However, this right is a limited one, subject it appears, to a balancing test comparing the individual's interest in confidentiality to the public's interest in disclosure. *See generally Pesce*, 830 F.2d at 795-97 & n.5 (7th Cir. 1987); *see also In Re August 1993 Regular Grand Jury*, 854 F. Supp. 1380, 1388-89 (S.D. Ind. 1994) (constitutional right to privacy under *Whalen* is a limited one); *Pagano*, 145 F.R.D. at 696 ("The Supreme Court has recognized only a limited privacy interest in the confidentiality of one's medical records.")(citing *Whalen*); *Morgenstern v. Wilson*, 133 F.R.D. 139, 142 (D. Neb. 1990); *Wei*, 127 F.R.D. at 97-98; *Schachar v. American Academy of Opthalmology, Inc.*, 106 F.R.D. 187, 189-90 (N.D. Ill. 1985). However, as the cases have recognized, the privacy interests of a patient in his or her medical records is tied to identity [*30] information contained in the records. *See Wei*, 127 F.R.D. at 98 ("Most people do not object solely to the disclosure of personal information. Rather it is the combination of the personal information with identifying information to which people object."). Once the identifying information is removed from the record, the patient's privacy interest is essentially eliminated. *See Pagano*, 145 F.R.D. at 699 ("the requested disclosure is permissible provided that the identities of the patients and physicians are protected"); *Wei*, 127 F.R.D. at 98 ("once the identifying information is redacted, the majority of the privacy concerns are eliminated") (citing *Schachar*, 106 F.R.D. at 190). Therefore, the third party medical records will be ordered produced, with the names and all other identifying information redacted.

However, the Relators have shown an understandable need to correlate each patient's documents so as to show the pattern of care that Dr. Chen provided to each particular infant. *See Wei*, 127 F.R.D. at 98. So as to allow the Relators this information, while at the same time ensuring that the patients' [*31] privacy interests remain protected, a number or letter code corresponding to each individual patient is to be substituted in place of the name of each patient so as to allow the Relators a complete picture of the care afforded to each particular infant. *Id.; see also Pagano*, 145 F.R.D. at 699. A master list containing the code and corresponding patient names is to be tiled under seal with the Court.

## C. Scope of Discovery

The Defendants also argue that the Relators' discovery requests are overbroad, burdensome, arid oppressive,

and must be limited. The Relators' discovery requests are governed by Fed. R. Civ. P. 26(b)(1), which states in pertinent part:

> [HN19]Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... The information sought need not be admissible at trial if the information appears to be reasonably calculated to lead to the discovery of admissible evidence.

[HN20]Courts are to construe this language liberally "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any [*32] issue that is or may be in the case." *Momah v. Albert Einstein Medical Center*, 164 F.R.D. 412, 417 (E.D. Pa. 1996)(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978)).

Furthermore, it is well settled that [HN21]the party objecting to the discovery must state the grounds for the objection "with specificity"; the mere recitation that a document discovery request is "overly broad, burdensome, oppressive, and irrelevant" will not suffice. *See Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998); *Momah*, 164 F.R.D. at 417 (citations omitted); Fed. R. Civ. P. 33(b)(4). When a discovery objection has been properly articulated, the party seeking discovery must demonstrate that the request lies within the bounds of Rule 26. If this showing is made, the party opposing discovery has the burden of showing that the discovery should not be had. *Momah*, 164 F.R.D. at 417 (citing *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 118-19 (N.D. Ind. 1991)).

The Relators seek a significant amount of [*33] discovery, including the medical and billing records of Dr. Chen dating back to 1988, a date corresponding to when he first came to Lutheran. The Defendants first argue that the discovery request should be limited to only a six year period, the length of the applicable statute of limitations, and not the ten years sought by the Relators. *See* 31 U.S.C. § 3731(b) (six year statute of limitations for False Claims Act). This argument is not supported by Rule 26(b)(1), which is phrased in terms of "relevance," rather than time. Indeed, as a leading commentator has stated, [HN22]"the fact that matters with respect to which discovery is sought may be time-barred by the applicable statute of limitations does not foreclose discovery," particularly because an act "beyond the period of limitations may constitute relevant background evidence in a proceeding in which

a current practice is at issue." 6 JAMES WM. MOORE, ET AL., MooRE'S FEDERAL PRACTICE § 26.41 [7] at 26-105 - 26-106 (3d ed. 1998). Moreover, as the Relators explained at oral argument, the history of Dr. Chen's billing practices during his time at Lutheran might demonstrate a pattern of fraudulent billing, [*34] a point that convincingly allows this broad scope of discovery given that it appears reasonably calculated to lead to the discovery of admissible evidence.

Next, the Defendants take issue with the fact that the Relators seek discovery as to the billing records of all children who have been given care in the NICU, whether those children paid for services through private insurance or through Medicare. According to the Defendants, this exceeds the scope of the Relators' claims, which of course assert that the Defendants submitted fraudulent claims only for those children covered by Medicare. Again, the Defendants' argument takes an unduly narrow view of Rule 26. At oral argument the Relators explained that their claims may be proved (or disproved) by comparing Dr. Chen's pattern of care and billing of infants covered by private insurance with Dr. Chen's pattern of care and billing of infants covered by Medicare. This comparison appears to be reasonably calculated to lead to the discovery of admissible evidence, and therefore the Relators' discovery requests shall not be limited to only those infants covered by federally-funded health care programs.

The Defendants also make a rather [*35] general argument that the Relators' discovery requests are unduly burdensome and oppressive. However, since the burden of demonstrating that the request is oppressive and overbroad lies with the Defendants, "generally, [HN23]a party seeking to avoid discovery on a burdensome argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden.'" n10 *Coker, 177 F.R.D. at 686; see also EEOC v. Quad/Graphics, Inc., 63 F.3d 642, 645 (7th Cir. 1995)* (compliance with a subpoena would be "excessively burdensome" if "compliance would threaten the normal operation of a respondent's business.") (citation omitted). Here, while the Defendants have made a general attempt at showing the anticipated cost of complying with this discovery, their "burdensome" argument is largely conclusory, and insufficient to sustain their objection. See *Coker, 177 F.R.D. at 686* (collecting cases); see also *Schachar, 106 F.R.D. at 190* ("Plaintiffs have made no showing that discovery here is any more burdensome than is typical in responding to discovery requests in complex cases."). In sum, the Defendants' objections [*36] to the scope of discovery are not well taken.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n10 At oral argument it was revealed that at least some, if not most, of the medical records have been duplicated and stored in microfiche format. If so, the production of the medical records should be greatly facilitated.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

## IV. CONCLUSION

For the reasons herein provided, the Defendants' motions for a protective order are DENIED. However, the Court is not unmindful of the logistical difficulties that will be associated with completing discovery in this case, and therefore provides the following directives as to how this discovery is to proceed. See Fed. R. Civ. P. 26(b)(2) (district court has broad discretion to control discovery).

First, counsel for the Relators are to be granted an initial opportunity to determine the nature and extent of the documents, by description, they seek from the medical files. Accordingly, counsel for the Relators are to be provided with a randomly selected specimen sample of twenty (20) patient [*37] files, redacted as to name and identifying information, so that they may identify the kinds of records needed from each file. Once counsel for the Relators have identified by description the documents needed from every file, then these documents should be provided to them, appropriately redacted as discussed *supra.*

The ultimate cost of producing and redacting the documents will be determined by the Court at a later time, subject to the outcome of the case and the Court's consideration of these costs under Fed. R. Civ. P. 54. However, given the rather broad reach of the Relators' discovery requests, the Court will exercise its considerable discretion under Rule 26(b)(2) and require that the Relators bear the initial costs for these discovery requests. n11 Finally, given the confidential nature of the discovery sought, a mutually agreeable protective order should be prepared to control access to the documents following their discovery production. Counsel are to submit such a protective order within twenty (20) days.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n11 [HN24]These initial costs, which concern discovery in a federal court case asserting federal claims, are not controlled or set by any state statute. Rather, these

1998 U.S. Dist. LEXIS 23512

costs should reflect the reasonable costs associated with the production and redaction of the documents.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*38]

SO ORDERED.

Enter for this 8th day of October, 1998.

Roger B. Cosbey

United States Magistrate Judge

**EXHIBIT 12**

064488.1001

2003 U.S. Dist. LEXIS 10100

PAMELA JONES, Plaintiff, vs. HAMILTON COUNTY SHERIFF'S DEPARTMENT, et al., Defendants.

CAUSE NO. IP 02-0808-C-H/K

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

2003 U.S. Dist. LEXIS 10100

June 12, 2003, Decided

**SUBSEQUENT HISTORY:** Summary judgment granted by <u>Jones v. Hamilton County Sheriff's Dep't, 2004 U.S. Dist. LEXIS 3185 (S.D. Ind., Feb. 13, 2004)</u>

**DISPOSITION-1:** [*1] Jones' motion to compel discovery GRANTED IN PART and DENIED IN PART.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendants, a sheriff's department and three department officials, for retaliation under Title VII of the Civil Rights Act of 1964, <u>42 U.S.C.S. § 2000e</u> et seq., and <u>42 U.S.C.S. § 1983.</u> The employee moved to compel discovery.

**OVERVIEW:** The employee claimed that she was disciplined and terminated in retaliation for her complaints about sexual harassment and about conditions at a juvenile detention center. The employee's motion to compel followed several extensions of time for defendants to respond to discovery and attempts to resolve discovery disputes; therefore, the employee's failure to file a statement or arrange a conference as required by U.S. Dist. Ct., S.D. Ind., R. 37.1 did not warrant denial of the motion. Defendants failed to produce a privilege log as required by Fed. R. Civ. P. 26(b)(5). A draft version of defendants' Equal Employment Opportunity Commission position statement contained counsel's mental impressions, legal advice, and evaluation of the case and was protected by the attorney-client privilege. Correspondence between defendants and counsel also was protected. The employee was entitled to review personnel files of similarly situated employees and the department officials. She also was entitled to discovery of her own time sheets. Defendants were not allowed to impose costs on the employee for recovering and copying the documents.

**OUTCOME:** The employee's motion to compel was granted as to her request for a privilege log, information that did not fall within the attorney-client privilege, personnel files, and time sheets. The motion was otherwise denied.

**CORE TERMS:** discovery, personnel, interrogatory, attorney-client, responsive, motion to compel, log, work product doctrine, privileged, motion to compel discovery, protective order, legal advice, discoverable, disclosure, local rule, similarly situated, separate statement, subject matter, termination, social security, legal advisor, applicability, supervisory, withheld, withhold, discover, prevail, redact, discovery dispute, training session

**LexisNexis(TM) Headnotes**

*Civil Procedure > Discovery Methods > Motions to Compel*

[HN1]See U.S. Dist. Ct., S.D. Ind., R. 37.1.

*Civil Procedure > Discovery Methods > Motions to Compel*

[HN2]As U.S. Dist. Ct., S.D. Ind., R. 37.1 itself states, the court "may" deny a discovery motion if unaccompanied by a separate statement; the court is not required to deny such a motion.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN3]Fed. R. Civ. P. 26(b)(1) permits discovery into any matter, not privileged, that is relevant to the claim or defense of any party.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN4]Under Fed. R. Civ. P. 26(b)(1) as revised, parties are still able to obtain discovery that is relevant to the subject matter involved in the pending action if good cause is shown. Under the relevancy standard, information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

*Civil Procedure > Discovery Methods > Motions to Compel*

*Civil Procedure > Disclosure & Discovery > Relevance*

2003 U.S. Dist. LEXIS 10100

[HN5]In the event the parties cannot informally resolve a discovery dispute, Fed. R. Civ. P. 37 provides a vehicle for the aggrieved party to request an order compelling discovery. When the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN6]To resolve discovery disputes, and determine what documents are at issue, courts often look to the privilege log produced by the discovery opponent required by Fed. R. Civ. P. 26(b)(5).

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN7]See Fed. R. Civ. P. 26(b)(5).

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN8]The requirement to provide a privilege log is described as follows: discovery opponents must produce a privilege log listing each separate document they claim to be beyond discovery, described in the following separate categories. For each document, the log should identify the date, the author and all recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories, especially this last category, must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the requirements expounded upon in the foregoing discussion. Accordingly, descriptions such as "letter re claim," "analysis of claim," or "report in anticipation of litigation"--with which courts have grown all too familiar--will be insufficient. This may be burdensome, but it will provide a more accurate evaluation of a discovery opponent's claims and takes into consideration the fact that there are no presumptions operating in the discovery opponent's favor. Any failure to comply with these directions will result in a finding that the discovery opponents have failed to meet their burden of establish the applicability of the privilege.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN9]If the description contained in a privilege log falls below the required standard and fails to provide sufficient information for the court and the party seeking disclosure to assess the applicability of the attorney-client privilege or work product doctrine, then disclosure of the document is an appropriate sanction.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN10]To establish the protection of a privilege, descriptions of privileged documents must contain sufficient information for the court to ascertain the content of the documents.

*Legal Ethics > Client Relations > Attorney-Client Privilege*

[HN11]The attorney-client privilege only protects a client's confidential communications made to an attorney for the purpose of obtaining legal advice from a professional legal advisor acting in such a capacity. A document is protected by the attorney-client privilege when (1) legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or the legal advisor, (8) except the protection may be waived.

*Legal Ethics > Client Relations > Attorney-Client Privilege*

[HN12]The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. The party asserting the privilege bears the burden of establishing all of its elements on a document-by-document basis.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN13]Documents containing an attorney's and a client's mental impressions and strategies, and either soliciting or providing legal advice, are the very type of communications that the attorney-client privilege prevents an opposing party from obtaining in the discovery process.

*Legal Ethics > Client Relations > Attorney-Client Privilege*

[HN14]Attorney-client privilege claims protect only documents, from client to lawyer or from lawyer to lawyer or from lawyer to client, whose production would reveal the content of privileged communications from clients made for the purpose of securing legal advice or services.

*Civil Procedure > Costs & Attorney Fees > Litigation Costs*

2003 U.S. Dist. LEXIS 10100

[HN15]Practically speaking, parties typically absorb the costs associated with reasonable, routine discovery, recognizing the old adage that "what goes around comes around." Moreover, a prevailing party may seek to recover the costs associated with copying discovery at the conclusion of the case pursuant to 28 U.S.C.S. § 1920. This is not to say that a party must always produce discovery without any cost to the opponent, and hope for reimbursement only when the litigation ends. Where discovery is expected to be voluminous-- particularly if the burden of production falls disproportionately on one party--a party might rightly insist on payment of costs at the time of disclosure, or send the copying to an outside vendor that will charge the party's opponent directly.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN16]In an employment discrimination case, personnel files contain highly relevant information that would "greatly assist" a plaintiff in conducting discovery.

*Civil Procedure > Discovery Methods > Requests for Production & Inspection*

[HN17]Privacy concerns notwithstanding, personnel files may be discoverable under certain circumstances.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN18]In Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., litigation, in which plaintiffs are required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN19]Evidence of general patterns of discrimination is discoverable in disparate treatment cases.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN20]Discovery of supervisory evaluations and other materials in personnel files is often permitted in employment discrimination cases, despite a concern that supervisors be allowed to discipline and evaluate their subordinates candidly, because these documents may, in many cases, be the best available evidence of the knowledge and state of mind of the supervisory officials.

*Evidence > Privileges > Reports Privileged by Statute*

[HN21]Under the Americans with Disabilities Act, employers are required to maintain medical records in a separate file from that of employee personnel files

and treat them as confidential medical records. 42 U.S.C.S. § 12112(d)(3)(B).

*Evidence > Privileges > Reports Privileged by Statute*

[HN22]See 42 U.S.C.S. § 12112(d)(3)(B).

**COUNSEL:** For PLAINTIFF: John H. Haskin, Haskin Lauter & LaRue, Indianapolis, IN.

For DEFENDANTS: Michael B. Langford, Scopelitis Garvin Light & Hamson, Indianapolis, IN.

**JUDGES:** Tim A. Baker, United States Magistrate Judge, Southern District of Indiana.

**OPINIONBY:** Tim A. Baker

**OPINION: ENTRY ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**I. Background**

The complaint alleges that on or about February 6, 1999, Defendant Hamilton County Sheriff's Department ("HCSD") hired Plaintiff Pamela Jones as a correctional officer at its juvenile detention center. [Compl. P 4]. On January 7, 2001, Tim Tidwell, a fellow co-worker, engaged in a profanity-laced rage in Jones' presence. In response, Jones filed an internal complaint with HCSD alleging Tidwell sexually harassed her. [Id. at PP 15-16]. On February 7, 2001, Jones received a written reprimand and suspension from Defendant HCSD Captain Mitchell Russell. [Id. at P 17].

On April 9, 2001, Jones complained to HCSD about conditions at the juvenile center that posed a serious danger to the public, fellow officers, and inmates. Specifically, Jones reported that a fellow [*2] correction officer, Jerry Young, left her unattended in the control room. Thereafter, on April 20, Jones received a verbal reprimand from Defendant HCSD Sergeant Angela Houston. [Id. at PP 18-19].

On Thursday, May 17, 2001, HCSD scheduled a training session. Jones' regularly scheduled days off were Thursday and Friday. [Id. at P 21]. In addition, Jones scheduled days off on May 19 and 20 to spend time with her son before he left for a military operation overseas. Jones' supervisor, Defendant Sergeant Donita Christy, knew this was the reason Jones scheduled off for those days. [Id. at PP 22-23]. In fact, Jones notified Christy on at least two occasions that she was unavailable to attend the training session. On May 21, HCSD terminated Jones for failure to attend the training session. [Id. at PP 21, 23-24].

Jones filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., alleging that the

HCSD retaliated against her for exercising statutorily protected rights. Jones also brings this action under the First Amendment, 42 U.S.C. § 1983, alleging that HCSD, and Russell, Christy, and [*3] Houston in their individual capacities retaliated against her for exercising her free speech rights. [Id. at PP 25-29].

On October 7, 2002, Jones served her initial interrogatories and requests for production on Defendants. After Jones agreed to several extensions of time allowing Defendants to respond to discovery, on February 12, 2003, Defendants served their responses. On February 19, counsel for Jones sent a letter to counsel for Defendants stating his belief that Defendants' discovery responses were deficient. [Pl. Ex. I]. In the meantime, Jones served a second set of interrogatories and requests for production. After an unfruitful dialogue between counsel to resolve their discovery disputes on both sets of discovery, Jones filed a motion to compel. In dispute are Defendants' responses to Interrogatory Nos. 4, 8(e), and 17-20, and Requests for Production Nos. 2, 4-6, 7, 12, 19-22, 24-25, 30, 33 and 36. Defendants oppose this motion. For the reasons set forth below, Jones' motion to compel discovery is GRANTED IN PART and DENIED IN PART.

## II. Discussion

### A. Local Rule 37.1

As an initial matter, Defendants claim that Jones violated Local Rule 37.1 in filing her [*4] motion to compel. Local Rule 37.1, entitled "Informal Conference to Settle Discovery Disputes," provides:

[HN1]The Court may deny any discovery motion (except those motions brought by a person appearing pro se and those brought pursuant to Rule 26(c), Federal Rules of Civil Procedure, by a person who is not a party), unless counsel for the moving party files with the Court, at the time of filing the motion, a separate statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorney(s) on the matter(s) set forth in the motion. The statement shall recite, in addition, the date, time, and place of such conference and the names of all parties participating therein. If counsel for any party advises the Court in writing that opposing counsel has refused or delayed meeting and discussing the problems covered in this rule, the Court may take such action as is appropriate to avoid unreasonable delay.

Richmond v. UPS Service Parts Logistics, 2002 U.S. Dist. LEXIS 7496, 2002 WL 745588, *2-3 (S.D. Ind. 2002), quoting S.D. Ind. L.R. 37.1. In this case,

Defendants state that Jones violated the rule by not filing the separate statement [*5] or arranging a discovery conference to resolve their disputes. Defendants also state they encouraged Jones' counsel to arrange a time to review "7 inches of documentation" at their office. [Defs.' Br., pp. 3-4].

Jones' counsel did not file with the Court a separate statement demonstrating compliance with the rule, or make formal arrangements for a conference. Given the frequency with which Jones' counsel appears in this Court, counsel's failure to adhere to the requirements of Local Rule 37.1 is both surprising and disappointing. Nevertheless, Jones' counsel certainly made reasonable efforts to resolve the present discovery dispute before seeking Court intervention. For instance, on January 15, 2003, after agreeing to several extensions of time, counsel for Jones sent a letter to counsel for Defendant inquiring why their discovery responses were untimely. In addition, Jones' counsel sent a letter to Defendants' counsel on March 17 again addressing the parties' discovery disputes, and spoke with Defendants' counsel on the telephone on March 31 about this matter. The correspondences provided Defendants ample notice of the discovery dispute and Jones' intention of filing a motion to [*6] compel in the event an agreement was not reached.

Although Jones' counsel did not follow the letter of the local rule, he demonstrated substantial compliance in meeting the rule's requirements. To deny the motion to compel without prejudice, and to require further briefing "would be futile and expensive." Kobelco Metal Powder of America, Inc. v. The Energy Co-op., Inc., 2001 U.S. Dist. LEXIS 18393, 2001 WL 1397311, *1-2 (S.D. Ind. 2001). See also Felling v. Knight, 2001 U.S. Dist. LEXIS 22828, 2001 WL 1782361, *1 (S.D. Ind. 2001) ("the briefs leave little doubt the parties will not reach mutual agreement on the issues raised. Therefore, the court will address the underlying issues rather than deny Knight's motion solely on the basis of a procedural shortcoming. To hold otherwise would do little other than delay resolution of these issues, which have now been fully briefed."); Association For Disabled Americans v. Claypool Holdings, LLC, 2001 U.S. Dist. LEXIS 23729, 2001 WL 1112109, *8-9 (S.D. Ind. 2001) [HN2]("As the rule itself states, the court 'may' deny a discovery motion if unaccompanied by a separate statement; the court is not required to deny such a motion.").

With this in mind, the Court turns to the merits of [*7] Jones' motion.

### B. Standard on Motion to Compel Discovery

Federal Rule of Civil Procedure 26(b)(1) [HN3]permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." Sanyo Laser Products Inc. v. Bertlesmann Music Group Inc., 214 F.R.D. 496, 2003 U.S. Dist. LEXIS 8487, _ F. Supp.2d _ , 2003 WL 21181021, *2 (S.D. Ind. May 20, 2003), quoting Rule 26(b)(1). n1 Prior to this rule's revision in 2000, discovery was broadly defined in that information was generally discoverable if it was relevant to the subject matter involved in the pending action. See, e.g., Scaife v. Boenne, 191 F.R.D. 590, 592 (N.D. Ind. 2000). [HN4]Under the revised rule, parties are still able to obtain discovery that is relevant to the subject matter involved in the pending action if good cause is shown. See White v. Kenneth Warren & Son, Ltd., 203 F.R.D. 364, 366 (N.D. Ill. 2001) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). Under the relevancy standard, "information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of [*8] admissible evidence." Martin Properties, Inc. v. Florida Industries Investment Corp., 2003 U.S. Dist. LEXIS 6181, 2003 WL 1877963, *2 (N.D. Ill. Apr. 14, 2003), quoting Rule 26(b)(1).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Although Rule 26(b)(1) was amended almost three years ago, Jones cited the wrong standard for discovery. [Pl.'s Br., p. 6].

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - -

[HN5]In the event the parties cannot informally resolve a discovery dispute, Rule 37 provides a vehicle for the aggrieved party to request an order compelling discovery. See Adams v. Target, 2001 U.S. Dist. LEXIS 13052, 2001 WL 987853, *1 (S.D. Ind. 2001). When the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. See, e.g., Beach v. City of Olathe, Kansas, 203 F.R.D. 489, 496 (D. Kan. 2001), citing Scott v. Leavenworth Unified School Dist. No. 453, 190 F.R.D. 583, 585 (D. Kan. 1999). [*9]

## C. Defendants Failed to Produce a Privilege Log

[HN6]To resolve discovery disputes, and determine what documents are at issue, courts often look to the privilege log produced by the discovery opponent required by Rule 26(b)(5). See Coltec Industries, Inc. v. American Motorists Ins. Co., 197 F.R.D. 368, 373 (N.D. Ill. 2000). Rule 26(b)(5) provides:

> [HN7]Claims of Privilege or Protection of Trial Preparation Materials. When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Mold-Masters Ltd. v. Husky Injection Molding Systems Ltd., 2001 U.S. Dist. LEXIS 20152, 2001 WL 1558303, *2-3 (N.D. Ill. 2001), citing Rule 26(b)(5).

In Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 145 F.R.D. 84 (N.D. Ill. 1992), [HN8]the requirement to provide a [*10] privilege log was described as follows:

> discovery opponents [must] produce a privilege log listing each separate document they claim to be beyond discovery, described in the following separate categories. For *each* document, the log should identify the date, the author and *all* recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories, especially this last category, must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the requirements expounded upon in the foregoing discussion. Accordingly, descriptions such as "letter re claim," "analysis of claim," or "report in anticipation of litigation" -- with which we have grown all too familiar -- will be insufficient. This may be burdensome, but it will provide a more accurate evaluation of a discovery opponent's claims and takes into consideration the fact that there are no presumptions operating in the discovery

opponent's favor. Any failure to comply with these directions [*11] will result in a finding that the plaintiff-discovery opponents have failed to meet their burden of establish the applicability of the privilege.

Id. at p. 88 (emphasis in original). See also Allen v. Chicago Transit Authority, 198 F.R.D. 495, 498 n.1 (N.D. Ill. 2001) (same). [HN9]"If the description falls below this standard and fails to provide sufficient information for the court and the party seeking disclosure to assess the applicability of the attorney-client privilege or work product doctrine, then disclosure of the document is an appropriate sanction." Mold-Masters, 2001 U.S. Dist. LEXIS 20152, 2001 WL 1558303, at *2-3, citing Smithkline Beecham Corp. v. Apotex Corp., 193 F.R.D. 530, 534 (N.D. Ill. 2000).

In the case at bar, Jones' Interrogatory No. 20 requested that Defendants "identify each document that is responsive to Plaintiff's First Request for Production of Documents" [Pl. Ex. F]. Essentially, this interrogatory requests a privilege log already mandated by Rule 26(b)(5). Defendants improperly objected to this request, stating only that they withheld documents they contended fell under the attorney-client privilege and work [*12] product doctrine without providing a description of the documents withheld. See Ash v. Theros Intern. Gaming, Inc., 2001 U.S. Dist. LEXIS 10952, 001 WL 648632, *2 (N.D. Ill. 2001), quoting Christman v. Brauvin Realty Advisors, Inc., 185 F.R.D. 251, 257 (N.D. Ill. 1999) [HN10]("To establish the protection of a privilege, descriptions of privileged documents must contain sufficient information for the court to ascertain the content of the documents."). Defendants' shortcoming in this respect has needlessly complicated Jones' and the Court's job of ascertaining which documents are properly withheld based on a privilege.

Accordingly, with regard to Interrogatory No. 20, Jones' motion to compel discovery is GRANTED. Defendants are ordered to provide a privilege log consistent with Rule 26(b)(5).

**D. Documents Prepared After EEOC Charge Filed**

Jones states that Defendants provided deficient responses to Interrogatory Nos. 4, 18-19, and Request for Production Nos. 2, 7, 12, 19-22, and 24-25. [Pl.'s Br., pp. 8-9]. However, Defendants' responses reveal that they only dispute two categories of documents.

On June 13, 2001, Jones filed her first charge of discrimination with the EEOC. [*13] [Defs.' Ex. A]. Upon receiving this charge, the HCSD retained

attorney Michael Howard to conduct an investigation. Howard's investigation encompassed contacting individuals involved in Jones' termination and the individually-named Defendants. Howard also asked the Defendants to prepare documents and compile information in order for him to submit a position statement on behalf of the HCSD to the EEOC. [Defs.' Br., p. 5]. Defendants contend that the attorney-client privilege applies to: (1) drafts of the position statement submitted to the EEOC; and (2) communications between Howard and Defendants regarding the charge filed by Jones. [Id. at p. 6].

[HN11]The attorney-client privilege only protects a client's confidential communications made to an attorney for the purpose of obtaining legal advice from a professional legal advisor acting in such a capacity. See Rehling v. City of Chicago, 207 F.3d 1009, 1019 (7th Cir. 2000). To determine whether a document is protected by the attorney-client privilege, the Seventh Circuit has adopted the test formulated by Dean Wigmore. Under this test, a document is protected by the attorney-client privilege is when: (1) legal advice [*14] of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or the legal advisor, (8) except the protection may be waived.See United States v. White, 950 F.2d 426, 430 (7th Cir. 1991); Vardon Golf Co., Inc. v. Karsten Mfg. Corp., 213 F.R.D. 528, 531 (N.D. Ill. 2003). [HN12]The purpose of the attorney-client privilege is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Swidler & Berlin v. United States, 524 U.S. 399, 403, 141 L. Ed. 2d 379, 118 S. Ct. 2081 (1998). The party asserting the privilege bears the burden of establishing all of its elements on a document-by-document basis. See Mold-Masters Ltd. v. Husky Injection Molding Systems Ltd., 2001 U.S. Dist. LEXIS 20152, 2001 WL 1558303, *1 (N.D. Ill. 2001).

Applying these principles, the Court finds that the two categories of documents Defendants seek to protect fall [*15] under the attorney-client privilege. In Long v. Anderson University, 204 F.R.D. 129 (S.D. Ind. 2001), plaintiff sought to discover from defendant a draft response to plaintiff's complaint drafted by defendant's dean of students, and a letter from defendant's human resource manager regarding plaintiff's discovery requests. In denying plaintiff's motion to compel in these instances, and finding that the attorney-client privilege applied, the Court held that "these [HN13]documents contain the attorney's and client's

2003 U.S. Dist. LEXIS 10100

mental impressions, strategies, and either solicit or provide legal advice ... [they are the] very type of communications that the attorney-client privilege prevents an opposing party from obtaining in the discovery process." Id. at 135. Similar to the situation in Long, Defendants' drafts of the position statement contain counsel's mental impressions, legal advice, and evaluation of the case. In addition, the correspondence between counsel and Defendants was drafted with the expectation that the information contained therein would not be disclosed. See, e.g., [*16] American Nat. Bank and Trust Co. of Chicago v. AXA Client Solutions, LLC., 2002 U.S. Dist. LEXIS 4805, 2002 WL 1058776, *2 (N.D. Ill. 2002) (drafts of letters protected by the attorney-client privilege); Old Second Nat. Bank of Aurora v. Commercial Union Midwest Ins. Co., 1999 U.S. Dist. LEXIS 18246, 1999 WL 1068635, *3 (N.D. Ill. 1999) (letters between attorney and client "are unquestionably attorney-client privileged."); Lexecon, Inc. v. Milberg Weiss Bershad Specthrie & Lerach, 1993 U.S. Dist. LEXIS 6898, 1993 WL 179789, *7 (N.D. Ill. 1993) [HN14]("Attorney-client privilege claims would protect only documents, from client to lawyer or from lawyer to lawyer or from lawyer to client, whose production would reveal the content of privileged communications from clients made for the purpose of securing legal advice or services."). n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n2 On page 4 of Defendants' brief, it appears Defendants are asserting the work product doctrine in regard to the drafts of the position statement and in their communications with counsel. However, Defendants fail to articulate how the work product doctrine applies to these documents. Therefore, this passing assertion of the work product doctrine is waived.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*17]

This does not end the Court's analysis. Since in their brief Defendants only claim a privilege on two categories of documents, it appears at first glance they concede they should respond to Interrogatory Nos. 4, 18-19, and Request for Production Nos. 2, 7, 12, 19-22, and 24-25 that request information outside of what the Court has deemed protected by the attorney-client privilege. Indeed, although Defendants objected to these discovery requests on the grounds of the attorney-client privilege and work product doctrine,

they respond by stating that Jones may review responsive documents at their counsel's office. [Pl. Ex. F]. After reviewing each disputed interrogatory and request for production, in light of the Court's ruling in this section, Defendants' responses permitting Jones and her counsel an opportunity to review responsive documents appears to be appropriate as to the remaining discovery requests. See Fed. R. Civ. P. 33(b), 34.

However, the Court is troubled by Defendants' restraint that these responsive documents may only be copied at Jones' expense. [HN15]Practically speaking, parties typically absorb the costs associated with reasonable, routine discovery, recognizing the [*18] old adage that "what goes around comes around." Moreover, a prevailing party may seek to recover the costs associated with copying discovery at the conclusion of the case pursuant to 28 U.S.C. § 1920. This is not to say that a party must always produce discovery without any cost to the opponent, and hope for reimbursement only when the litigation ends. Where discovery is expected to be voluminous -- particularly if the burden of production falls disproportionally on one party -- a party might rightly insist on payment of costs at the time of disclosure, or send the copying to an outside vendor that will charge the party's opponent directly. In this instance, however, Defendants' discovery responses are only 7 inches thick. As a result, Defendants are ordered to produce documents responsive to Jones' discovery requests under this section at no charge. In the event Defendants prevail in this litigation, they may elect to pursue their costs under Rule 54. See, e.g., AA Sales & Associates. Inc. v. JT&T Products Corp., 2001 U.S. Dist. LEXIS 11065, 2001 WL 855867, *2 (N.D. Ill. 2001) (court permitted defendant to recover a portion of its costs for "document discovery" under [*19] Rule 54(d)).

Accordingly, Jones' motion to compel discovery is GRANTED IN PART and DENIED IN PART. Pursuant to the attorney-client privilege, Defendants may withhold from its discovery responses: (1) drafts of the position statement submitted to the EEOC; and (2) communications between Howard and Defendants regarding the Jones' EEOC charge. In regard to documents responsive to Jones' discovery requests under this section, Defendants are ORDERED to produce these documents to Jones' counsel at no charge.

E. Personnel Files

Request Nos. 4, 5, and 6 seek the personnel files of the three individually-named Defendants, and Request Nos. 30, 33, and 36 seek the personnel files of Tim Tidwell, Jerry Young, and Becky Graham, all individuals Jones contends are similarly situated to her

in respect to her Title VII claim. [Pl. Exs. F & G]. Defendants object to the production of this information, claiming that the requests seek confidential information such as medical records protected by federal and state law. [Pl. Exs. F & M].

Defendants' privacy concerns in its employment records are well-founded. However, Jones may discover the requested personnel files of similarly situated employees [*20] Tidwell, Young, and Graham. [HN16]"Personnel files contain highly relevant information" that would "greatly assist" a plaintiff in conducting discovery. Spina v. Forest Preserve of Cook County, 2001 U.S. Dist. LEXIS 19146, 2001 WL 1491524, *3 (N.D. Ill. 2001). This was demonstrated recently in Tomanovich v. Glen, 2002 U.S. Dist. LEXIS 14885, 2002 WL 1858795 (S.D. Ind. 2002). In that case, plaintiff requested the personnel files of individuals similarly situated to her. In granting plaintiff's motion to compel, the Court held that the "production of these requested personnel files will[] assist Tomanovich in establishing a prima facie case of race, national origin, and age discrimination since she must show that similarly situated employees outside her protected class received more favorable treatment in compensation, promotion, disciplinary action, and termination, and will likely include relevant information such as age and last known address." 2002 U.S. Dist. LEXIS 14885, Id. at *7. However, the Court permitted the defendant to redact any social security numbers that may appear in documents. Id. See also EEOC v. Staffing Network, L.L.C., 2002 U.S. Dist. LEXIS 21318, 2002 WL 31473840, *5 (N.D. Ill. 2002) [HN17]("privacy concerns notwithstanding, personnel files [*21] may be discoverable under certain circumstances."); Wright v. Hollywood Casinos, 2002 U.S. Dist. LEXIS 8486, 2002 WL 989457, *2 (N.D. Ill. 2002) (plaintiff entitled to personnel files of employees who held the same job as plaintiff); Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 622 (S.D. Ind. 2002) (the information contained in personnel files of similarly situated individuals may assist plaintiff in establishing his disparate treatment claims); Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991) [HN18]("In Title VII litigation, in which plaintiffs are similarly required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files.").

The Court also finds that Jones can discover the personnel files of the individually-named Defendants, each of whom allegedly played a role in Jones' termination. The discovery of personnel files of supervisory employees was discussed in Sykes v. Target Stores, 2002 U.S. Dist. LEXIS 6627, 2002 WL 554505 (N.D. Ill. 2002). There, plaintiff sought the personnel files of individuals involved in the decision not to promote him. Plaintiff claimed entitlement to these documents because this "information may lead to [*22] admissible evidence regarding instances where Target discriminated against other individuals." 2002 U.S. Dist. LEXIS 6627, Id. at *3. The court agreed. [HN19]"Evidence of general patterns of discrimination is discoverable in disparate treatment cases ... [Plaintiff's] request for supervisor personnel files is reasonably calculated to lead to the discovery of prior complaints of discrimination against Target." 2002 U.S. Dist. LEXIS 6627, Id. at *4. See also Spina v. Forest Preserve of Cook County, 2001 U.S. Dist. LEXIS 19146, 2001 WL 1491524, *3 (N.D. Ill. 2001) (court ordered production of personnel files of individual defendants and of females who complained of sexual harassment and/or discrimination); Revelle v. Trigg, 1999 U.S. Dist. LEXIS 890, 1999 WL 80283, *3 (E.D. Pa. 1999) [HN20]("discovery of supervisory evaluations and other materials in police personnel files is often permitted, despite a concern that supervisors be allowed to discipline and evaluate their subordinates candidly, because these documents may, in many cases, be the best available evidence of the knowledge and state of mind of the supervisory officials."). Again, Defendants may redact any social security numbers that appear on any documents.

Defendants state that production of these personnel [*23] files "violate a variety of federal and state statutes regarding medical information, including the recently revamped HIPPA statutes and regulations." [Defs.' Br., p. 8]. Apparently, HCSD's personnel files contain documents on medical and psychological testing. [Id.]. [HN21]Under the Americans with Disabilities Act, employers are required to maintain medical records in a separate file from that of employee personnel files and treat them as a confidential medical records. See Lindgren v. Camphill Village Minnesota, Inc., 2002 U.S. Dist. LEXIS 11078, 2002 WL 1332796, *8 (D. Minn. 2002), quoting 42 U.S.C. § 12112(d)(3)(B) ([HN22]"information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record."). If in fact HCSD is co-mingling its employees' medical record with its personnel files, Defendants may exclude any medical records in responding to Jones' request. However, HCSD's apparent practice of co-mingling these records raises other issues that may require HCSD's attention.

Accordingly, Jones' motion to compel a response to Request Nos. 4, 5, 6, [*24] 30, 33, and 36 is GRANTED. Defendants are ordered to produce the responsive personnel files and shall redact any social

security numbers that appear on any documents and exclude any medical records. n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Defendants state that they do not believe Jones can review the requested personnel files without a protective order. While a protective order under Rule 26(c) is not mandated, it is encouraged to curtail discovery disputes such as the one demonstrated in this case. The parties are certainly welcome to file and seek Court approval of an agreed protective order to prevent future discovery disputes. However, any such proposed order shall strictly comply with Citizens First National Bank of Princeton v. Cincinnati Insurance Co., 178 F.3d 943 (7th Cir. 1999), and its progeny.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## F. Time Sheets

Interrogatory No. 8(e) requests that Defendants provide "the average number of hours Plaintiff worked per week during the twelve months preceding her termination." [Pl. Ex. F]. Defendants respond by stating [*25] the "average number of hours worked by Plaintiff can be calculated by reviewing Plaintiff's time statements, which are in storage at this time. The documents can be located by a Hamilton County employee. Costs for pulling such documents will amount to $ 20.60 per hour. It is expected to take 4-8 hours. If Plaintiff wishes to pay this amount, these records can be obtained for Plaintiff's review." [Id.]. After Jones filed her motion to compel, Defendants offered Jones the opportunity to conduct her own inspection of these documents pursuant to a protective order. [Defs.' Br., p. 9].

Defendants do not dispute that Jones is entitled to this information, and for good reason. Jones can obtain damages for lost overtime in the event she prevails in her case. Not having access to this information inhibits her ability to estimate her alleged damages. Defendants' proposed limitation that Jones pay Defendants for their time in locating these documents in a warehouse, or have Jones or her counsel sifting through thousands of documents to locate a relatively small number of documents, is unreasonable. As a result, Defendants are ORDERED to produce these responsive documents free of charge [*26] to Plaintiffs. As previously noted, Defendants may

request reimbursement of these costs in the event they prevail in this suit.

Accordingly, with regard to Interrogatory No. 8(e), Jones' motion to compel discovery is GRANTED. Defendants are ordered to provide the requested time sheets to Jones at no cost.

## G. Interrogatory No. 17

Interrogatory No. 17 asks Defendants to "state with particularity the legal and factual basis upon which [they] rely in asserting each and every affirmative defense contained in Defendants' Answer, Affirmative Defenses, and Demand for Trial by Jury." [Pl. Ex. A]. Although Defendants do not object to the interrogatory, Jones claims that they provided a response that did not set forth a legal or factual basis for their affirmative defenses. [Pl.'s Br., p. 11].

The information Jones seeks is certainly discoverable under the revised discovery standard, which states that litigants may obtain discovery on information "relevant to the claim or defense of any party." See Rule 26(b)(1). The Court has reviewed Defendants' response. While a more complete response may have been possible, the Court cannot say that Defendants' response is so deficient [*27] as to justify compelling a more detailed response.

Accordingly, with regard to Interrogatory No. 17, Jones' motion to compel discovery is DENIED.

## III. Conclusion

Jones' motion to compel discovery is GRANTED in regard to Interrogatory Nos. 8(e) and 20, and Request Nos. 4, 5, 6, 30, 33, and 36, and DENIED in regard to Interrogatory No. 17. With regard to Interrogatory Nos. 4, 18-19, and Request for Production Nos. 2, 7, 12, 19-22, and 24-25, Jones' motion is GRANTED IN PART and DENIED IN PART. Defendants may withhold: (1) drafts of the position statement submitted to the EEOC; and (2) communications between Howard and Defendants regarding the EEOC charge Jones filed.

Consistent with this entry, Defendants shall respond to Jones' discovery requests and provide a privilege log within 15 days. The parties are encouraged to enter into a mutually agreed protective order to prevent future disputes and facilitate discovery.

So ordered.

DATED this 12th day of June, 2003.

Tim A. Baker

United States Magistrate Judge

2003 U.S. Dist. LEXIS 10100

Southern District of Indiana

**EXHIBIT 13**

064488.1001

2002 U.S. Dist. LEXIS 20694

CASH TODAY OF TEXAS, INC., et al., Plaintiffs, v. JEROME N. GREENBERG, et al., Defendants.

C.A. No. 02-MC-77-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 20694

October 23, 2002, Decided

**DISPOSITION-1:** [*1] Motion to quash subpoena duces tecum DENIED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** In an action arising from the dissolution of a joint venture, defendant issued and served its lender a subpoena duces tecum for production of certain documents. The lender moved to quash the subpoena.

**OVERVIEW:** The lender entered into a servicing relationship with plaintiff to provide loans to consumers. After plaintiff and defendant's joint venture was dissolved, defendant sought to compel, pursuant to a subpoena, the production of documents relating to transactions and communications between the lender and plaintiff and other defendants. The lender objected to the subpoena, claiming that the requested information constituted confidential information and trade secrets, and the subpoena was unduly burdensome. The court disagreed, finding that the lender failed to proffer sufficient evidence that the documents sought contained confidential and trade secret material. In addition, the lender could not show that harm would flow from disclosure of such information. Although the subpoena appeared to create a substantial burden on the lender, a nonparty to the litigation, by requesting the production of over 20,000 individual loan files, defendant had offered to accept computer disks or reports summarizing the relevant documents, and to copy relevant documents at its own expense. Therefore, the lender could not prove that production was an undue burden.

**OUTCOME:** The lender's motion to quash the subpoena duces tecum was denied.

**CORE TERMS:** subpoena, disclosure, discovery, confidential, trade secrets, trade secret, undue burden, servicers, relevance, subpoenaed, competitor, harmful, requested information, confidentiality, protective order, motion to quash, economic value, relevancy, disclosure of confidential information, confidential information, business relationship, joint venture, proprietary, nonpublic, consumer, borrowers, lender, personal information, damages resulting, nonparty

**LexisNexis(TM) Headnotes**

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN1]Fed. R. Civ. P. 26 allows for discovery of any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is given very broad meaning. This is especially true because determinations of relevance for discovery purposes are made well in advance of trial. Those facts which, for whatever reason, are not to be considered in determining the ultimate issues may be eliminated in due course. Therefore, only if it is palpable that the evidence sought can have no possible bearing upon the issues should a court deny discovery by quashing a subpoena. Once an objection is raised as to relevancy, the party seeking discovery bears the burden of demonstrating the relevance of the sought information to the issues in litigation.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN2]Although Fed. R. Civ. P. 26 refers specifically to depositions, subpoenas are governed by the same standards. The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1).

*Trade Secrets Law > Civil Actions > Discovery*

*Civil Procedure > Disclosure & Discovery > Relevance*

*Trade Secrets Law > Factors > Economic Value*

[HN3]It is well established that trade secrets are not absolutely privileged from discovery in litigation. To avoid discovery of a trade secret, the party must demonstrate by competent evidence that the information sought is a trade secret and that disclosure of the secret might be harmful. Information may be deemed a trade secret if it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

by proper means by, other persons who can obtain economic value from its disclosure and use and is the subject of efforts to maintain its secrecy. Del. Code Ann. tit. 6, § 2001(4)(a) (2001). In determining if disclosure would be harmful, the court must consider not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order. Disclosure to a competitor is presumed more harmful than disclosure to a non-competitor.

*Trade Secrets Law > Civil Actions > Discovery*

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN4]If it is established that the sought information constitutes trade secrets and that disclosure would be harmful, the burden shifts to the party seeking discovery to establish that disclosure of the trade secret is relevant and necessary to the litigation. Relevance is established when the sought information is relevant, in broad terms, to the subject matter of the litigation. Disclosure of the evidence is considered necessary when the information is required for the movant to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories. If relevancy and need have been established, the court must balance the need for the information with the harm that would be caused if disclosure is ordered. This balance tilts in favor of disclosure. Indeed, discovery is virtually always ordered once the movant has established that the secret information is relevant and necessary.

*Civil Procedure > Trials > Subpoenas*

[HN5]Blanket and generalized assertions of confidentiality, absent allegations regarding specific harm, are not sufficient to sustain a motion to quash. Indeed, the party moving to quash must show, with specificity, that disclosure will work a clearly defined and serious injury to the moving party.

*Civil Procedure > Trials > Subpoenas*

[HN6] 12 C.F.R. § 332.10 limits the disclosure by banks and other financial institutions of nonpublic personal information to nonaffiliated third parties absent a consumer opt out notice. 12 C.F.R. § 332.10. However, 12 C.F.R. § 332.15(a)(7) expressly allows for disclosure of nonpublic personal information to comply with a properly authorized subpoena or summons. 12 C.F.R. § 332.15(a)(7)(ii).

*Civil Procedure > Trials > Subpoenas*

*Civil Procedure > Disclosure & Discovery > Protective Orders*

[HN7]Fed. R. Civ. P. 45 directs a court to quash or modify a subpoena if it subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv). In determining if compliance with the subpoena would create an undue burden, the court should consider not only the potential burden to the producing party, but the necessity of the information for the party seeking production, and whether the information can be obtained from other, more convenient sources. In this undue burden inquiry, nonparties are afforded special protection.

**COUNSEL:** For EASY MONEY HOLDING CORPORATION, defendant: Thomas P. Preston, Reed Smith LLP, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION: MEMORANDUM AND ORDER**

## I. INTRODUCTION

This matter stems from litigation currently pending in the United States District Court for the Northern District of Texas n1 ("the litigation") between the plaintiffs, Cash Today of Texas, Inc. ("Cash Today"), *et al.* (collectively "the plaintiffs") and the defendants, Easy Money Holding Corporation ("Easy Money"), *et al.* (collectively "the defendants"). The litigation arises from the dissolution of a joint venture between Cash Today and Easy Money. County Bank of Rehobeth Beach, Delaware ("County Bank") is a lender with a past business relationship with one of Easy Money's affiliates and present business relationship with Cash Today. Easy Money has issued and served upon County Bank a subpoena *duces tecum* ("the subpoena") for production of certain documents. County Bank moves to quash the subpoena (D.I. 1). For the following reasons, the court will deny County Bank's motion. [*2]



- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n1 Civil Case No. 401-CV-0794-A

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

## II. BACKGROUND

The litigation pending in the district court in Texas is a civil racketeering action arising from alleged conduct following the dissolution of a joint venture between Easy Money and Cash Today. Both companies provide

short-term credit to individuals through a variety of mechanisms, including what is frequently referred to as a "payday loan." The defendants and the plaintiffs typically act as "servicers" to provide such loans to consumers pursuant to agreements with lenders. County Bank is one such lender. For some period of time, County Bank maintained a servicing relationship with one of Easy Money's affiliates, Tidewater Services, until approximately March 2001, when County Bank terminated the relationship. n2 At some later point, n3 County Bank entered into a servicing relationship with Cash Today. Easy Money has issued and served upon County Bank the subpoena, which seeks the production of documents relating to transactions and communications between [*3] County Bank and Cash Today and other defendants.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 In October 2001, Easy Money instituted a suit against County Bank and others, alleging a variety of wrongs stemming from this termination. That litigation, Civil Action No. 01-Z-1959 in the United States District Court for the District of Colorado, currently is proceeding through discovery.

n3 The precise date seems to be contested.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## III. DISCUSSION

County Bank objects to the subpoena for several reasons. It claims: (1) the requested information is not relevant to the litigation; (2) the requested information constitutes confidential information and trade secrets; (3) the subpoena requires the disclosure of statutorily-protected nonpublic personal financial data of borrowers; and (4) the subpoena is unduly burdensome. The court will address these objections in turn.

A. Relevance of the Requested Information

County Bank objects to the subpoena as requesting information that is not relevant to the litigation, pursuant to Federal Rule of Civil [*4] Procedure 26. n4 [HN1]Rule 26 allows for discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). Relevance for discovery purposes is given very broad meaning. *Allen v. Howmedica Leibinger, Inc.,* 190 F.R.D. 518, 521 (W.D.Tenn. 1999). This is especially true because determinations of relevance for discovery purposes are made well in advance of trial. FED. R. CIV. P. 26

advisory committee note. Those facts which, for whatever reason, are not to be considered in determining the ultimate issues may be eliminated in due course. *Hercules Powder Co. v. Rohm & Haas Co.,* 3 F.R.D. 302, 304 (D. Del. 1943). Therefore, only if "it is palpable that the evidence sought can have no possible bearing upon the issues" should a court deny discovery by quashing a subpoena. *Id.* Once an objection is raised as to relevancy, the party seeking discovery bears the burden of demonstrating the relevance of the sought information to the issues in litigation. *Andritz Sprout-Bauer v. Beazer East,* 174 F.R.D. 609, 631 (E.D. Pa. 1997).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 [HN2]Although Rule 26 refers specifically to depositions, subpoenas are governed by the same standards. *See Syposs v. United States,* 181 F.R.D. 224, 226 (W.D.N.Y. 1998) ("The reach of a subpoena issued pursuant to FED. R. CIV. P. 45 is subject to the general relevancy standard applicable to discovery under FED. R. CIV. P. 26(b)(1)."); *Mannington Mills, Inc. v. Armstrong World Indus.,* 206 F.R.D. 525, 529 (D. Del. 2002) (detailing relationship between Rules 26 and 45).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*5]

In the instant case, Easy Money seeks the disclosure of documents relating to transactions between County Bank and Cash Today and certain of Cash Today's business entities. County Bank contends these documents are irrelevant because its relationship with the plaintiffs began in the Fall of 2001, while the litigation between the plaintiffs and the defendants focuses on acts allegedly committed in the Spring of 2000. However, Easy Money asserts the information is nonetheless relevant to certain claims and affirmative defenses of the litigation, including Cash Today's mitigation of damages. Easy Money claims that these damages may have continued to accrue after the joint venture was severed in the Spring of 2000, well through the time when County Bank concedes it began a business relationship with the plaintiffs. Further, Easy Money alleges that Cash Today may have kept funds that were rightfully the property of the defendants; that Cash Today deposited these funds to County Bank accounts; and that County Bank may act as an alter ego of Cash Today.

Even a cursory review of these allegations, detailed in the defendants' pleadings, reveals the requisite connection between the sought information [*6] and the litigation. The subpoenaed documents may provide information regarding damages resulting from Cash Today's alleged breach of contracts, as well as the extent of the plaintiffs' mitigation of damages. Certainly, the evidence sought may have some "possible bearing upon the issues" in the pending litigation. _Hercules Powder Co., 3 F.R.D. at 304._ The plaintiffs' objection that the information sought is not relevant is not justified.

B. Disclosure of Confidential Information and Trade Secrets

County Bank objects that the subpoena would require the disclosure of confidential information and trade secrets to its competitors. In some contexts, trade secrets are protected from discovery. [HN3]"It is well established," however, "that trade secrets are not absolutely privileged from discovery in litigation." _Coca Cola Bottling Co. v. The Coca Cola Co., 107 F.R.D. 288, 292 (D. Del. 1985)._ To avoid discovery of a trade secret, the party must demonstrate by competent evidence that the information sought is a trade secret and that disclosure of the secret might be harmful. _Id._ (citing _Centurion Industries, Inc. v. Warren Steurer & Associates, 665 F.2d 323, 325 (10th Cir. 1981);_ [*7]  8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2043, at 301 (1970)). Information may be deemed a trade secret if it "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use [and] is the subject of efforts ... to maintain its secrecy." DEL. CODE ANN. tit. 6, § 2001(4)(a)(2001); _see also Procter & Gamble Co. v. Nabisco Brands, Inc., et al., 111 F.R.D. 326 (D. Del. 1986)._ In determining if disclosure would be harmful, the court must consider "not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order." _Coca Cola Bottling Co., 107 F.R.D. at 293._ Disclosure to a competitor is presumed more harmful than disclosure to a non-competitor. _Id._

[HN4]If it is established that the sought information constitutes trade secrets and that disclosure would be harmful, the burden shifts to the party seeking discovery to establish that disclosure of the trade secret is relevant and necessary to the litigation.  [*8] _Id_ at 292._ Relevance is established, as discussed above, when the sought information is relevant, in broad terms, to the subject matter of the litigation. _Id._ Disclosure of the evidence is considered necessary

when the information is required "for the movant to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories." _Id_ at 293._ If relevancy and need have been established, the court must balance the need for the information with the harm that would be caused if disclosure is ordered. _Id._ This balance tilts in favor of disclosure. _Coca Cola Bottling Co., 107 F.R.D. at 293._ Indeed, "discovery is virtually always ordered once the movant has established that the secret information is relevant and necessary." _Id._ (citing a survey of relevant case law).

In the instant case, County Bank offers an affidavit by its vice president, David Gillan, to establish that the subpoenaed evidence constitutes confidential information and trade secrets. Mr. Gillan states:

County Bank is one of the pioneers in [its] field, and has expended considerable resources developing and implementing [*9] its proprietary means for carrying out [its] business, and developing a qualified network of servicers. County Bank also takes measures to safeguard its proprietary information, including entering into confidentiality agreements with those loan servicers that wish to enter into business with County Bank ... More importantly, County Bank takes significant measures to safeguard the personal and confidential financial data of its borrowers. These measures include the use of computer passwords and instructions to servicers and employees.

Aff. of David Gillan P 5, County Bank's Opening Brief, Exhibit E. It is not completely clear from this evidence, the only evidence offered by County Bank to support its position, that the documents sought contain confidential and trade secret material. For example, it has not established that its contracts with loan servicers and other "proprietary information" possess "independent economic value ... from not being generally known." DEL. CODE ANN. tit. 6, § 2001(4)(a)(2001). County Bank has not sustained its burden of showing that the requested information constitutes trade secrets. Nonetheless, the subpoenaed information may well be confidential [*10] in nature. Certainly, County Bank seems to treat its contracts with its loan servicers as confidential. Although the issue is not entirely clear, n5 the court, in any event, does not regard a finding of confidentiality as controlling, for the reasons set out below.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 For example, it appears that some of the same types of documents that County Bank now asserts are confidential were submitted in the Colorado litigation between Easy Money and County Bank,

2002 U.S. Dist. LEXIS 20694

without any designation of confidentiality or trade secret protection.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Even assuming the information is confidential in nature, County Bank also must show that harm will flow from disclosure of such information. It does not meet this burden. County Bank asserts merely that "there are very real threats to the integrity of County Bank's confidential operating systems lurking within this Subpoena" and that "this information would be very useful to Easy Money." County Bank's Opening Brief at 7. Nowhere in its briefing does County Bank elaborate about these "threats" **[*11]** supposedly inherent in the subpoena. n6 County Bank claims that Easy Money is a competitor (a claim rejected by Easy Money), and the court can well imagine harms that might flow from disclosure of confidential information to a competitor. It is not the court's role to fathom arguments on County Bank's behalf, however, and [HN5]"blanket and generalized" assertions of confidentiality, absent allegations regarding specific harm, are not sufficient to sustain a motion to quash. *United States v. International Business Machines Corp., 81 F.R.D. 628, 630 (S.D.N.Y. 1979)* (assertions that information is "confidential and sensitive" and that disclosure would cause "severe and irreparable injury" not sufficient); *see also In re Rogatory, 144 F.R.D. 272, 276 (E.D. Pa. 1992)* ("The mere fact that documents discuss trade secrets does not make them per se undiscoverable ...."). Indeed, the party moving to quash "must show, with specificity, that disclosure will work a clearly defined and serious injury to the moving party." *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enterprises, Inc., 160 F.R.D. 70, 72 (E.D. Pa. 1995).* County **[*12]** Bank simply has not done so. For these reasons, County Bank's objection that the subpoena requires the disclosure of confidential or trade secret material is insufficient to support a motion to quash.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 This is especially striking given County Bank's failure to file a reply brief.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Nonetheless, the court is mindful of County Bank's concern about the disclosure of sensitive or confidential information. For this reason, the court orders the parties to extend the protective order currently in place between the parties to encompass any information gathered pursuant to the subpoena.

C. Disclosure of Non-Public Financial Information of Borrowers

County Bank objects to the subpoena as requiring the production of confidential personal financial information of its borrowers, in contravention of 12 C.F.R. § 332. [HN6]Section 332.10 limits the disclosure by banks and other financial institutions of nonpublic personal information to nonaffiliated third parties absent a consumer "opt out" notice. *12 C.F.R. § 332.10* **[*13]** . Section 332.15(a)(7) of the same title, however, expressly allows for disclosure of nonpublic personal information "to comply with a properly authorized ... subpoena or summons." *12 C.F.R. § 332.15(a)(7)(ii).* Disclosure for purposes of the instant subpoena clearly is exempted from the opt-out requirements designed to protect consumer financial information. County Bank's objection to the subpoena per 12 C.F.R. § 332 is unfounded.

D. Burden of Complying

Finally, County Bank objects to the subpoena as unduly burdensome. [HN7]Federal Rule of Civil Procedure 45 directs a court to quash or modify a subpoena "if it ... subjects a person to undue burden." *FED. R. CIV. P. 45(c)(3)(A)(iv).* In determining if compliance with the subpoena would create an undue burden, the court should consider not only the potential burden to the producing party, but the necessity of the information for the party seeking production, and whether the information can be obtained from other, more convenient sources. *Allen, 190 F.R.D. at 525.* In this undue burden inquiry, nonparties are afforded "special protection." *Exxon Shipping Co. v. United States Dept. of Interior, 34 F.3d 774, 779 (9th Cir. 1994).* **[*14]**

In the instant case, the subpoena as issued would appear to create a substantial burden on County Bank, a nonparty to the litigation. The subpoena may require the production of over 20,000 individual loan files, as well as certain other documents. The burden of locating and copying such documents would fall on County Bank's staff of five people. Were the inquiry to end here, the court may well have found an undue burden. The defendants, however, in keeping with their statutory mandate "to take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena," *FED. R. CIV. P. 45(c)(1),* have proposed conditions that would dramatically lessen the burden on County Bank. For example, Easy Money has offered: (1) to accept computer disks or reports summarizing the relevant documents; and (2) to conduct an on-site, supervised inspection of the

relevant documents and to copy them at its own expense. Subject to these sorts of terms, the burden of complying with the subpoena is substantially reduced such that the burden is not "undue."

In this undue burden inquiry, the court also is mindful of the apparent necessity of the information and the absence of alternative [*15] sources. The subpoenaed information relates to the defenses and counterclaims of the defendants. The records of the financial transactions between County Bank and Cash Today may provide the defendants with evidence of Cash Today's failure to mitigate damages, or the damages resulting from any breach of contract on Cash Today's part. To paraphrase Judge Hand, then, unless County Bank is required to respond to the subpoena, the defendants will be unable to learn whether the plaintiffs have done them a wrong. *Grasselli Chemical Co. v. National Aniline & Chemical Co.*, 282 F. 379, 381 (S.D.N.Y. 1920). In addition, it does not appear, and the parties have not alleged, that such information can be provided by any other source. For these reasons, the court finds that whatever burden County Bank will encounter in complying with the subpoena is necessary and, as tempered by certain conditions discussed above, not undue.

## III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. County Bank's motion to quash the subpoena *duces tecum* (D.I. 1) is DENIED.

> 2. Counsel for County Bank and the defendants shall confer and, within 20 days [*16] of the date of this order, extend the protective order currently existing in the litigation to incorporate the information contemplated by the subpoena.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Dated: October 23, 2002

**EXHIBIT 14**

REBECCA SILLS, Plaintiff, v. BENDIX COMMERCIAL VEHICLE SYSTEMS, LLC, Defendant.

CAUSE NO. 1:04-CV-00149

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, FORT WAYNE DIVISION

2005 U.S. Dist. LEXIS 3392

March 3, 2005, Decided

**DISPOSITION-1:** Plaintiff's motion to compel granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant employer alleging discrimination and retaliation in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C.S. § 2601 et seq. The employee filed a motion to compel production of documents responsive to her first request for production of documents.

**OVERVIEW:** The employee sought copies of all FMLA paperwork, including initial application and determinations with reasons as to whether granted or not, all disciplinary actions taken against all such employees since 2000, and all attendance records of such employees since 2000 for current and former employees who had requested FMLA leave at any time from January 1, 2000, to the present. The employer maintained that the request was irrelevant, too broad, and unduly burdensome. It was apparent that the motion should be granted. First, the employee's claim rested upon the assertion that the employer discriminated and retaliated against her because she used, and continued to need, FMLA leaves of absence. One way to establish either a discrimination or retaliation claim was to show that the employer used the same modus operandi towards others similarly situated to the employee. The employer did not show that the burden and expense of the discovery sought outweighed its likely benefit, nor did the employer offers any evidence concerning the burden that would be imposed by the request.

**OUTCOME:** The employee's motion to compel production of documents was granted, and the employer was ordered to produce the requested documents on or before a date certain.

**CORE TERMS:** discovery, subject matter, similarly situated, party opposing, pending action, good cause, discriminated, truthseeking, retaliated, relevance, weighing, totality, outweigh, disciplinary, burdensome, attendance, narrowed

## LexisNexis(TM) Headnotes

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN1]Fed. R. Civ. P. 26(b)(1) permits discovery into any matter, not privileged, that is relevant to the claim or defense of any party.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN2]Under Fed. R. Civ. P. 26(b)(1) parties are able to obtain discovery that is relevant to the subject matter involved in the pending action if good cause is shown. Under the relevancy standard, information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

*Civil Procedure > Disclosure & Discovery > Relevance*

[HN3]When the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Civil Procedure > Disclosure & Discovery > Undue Burden*

[HN4]Before restricting discovery, a court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court. Fed. R. Civ. P. 26(b)(2)(iii).

*Civil Procedure > Disclosure & Discovery > Undue Burden*

[HN5]The party opposing requests for documents must demonstrate that they are burdensome or oppressive by submitting affidavits or evidence revealing the nature of the burden.

**COUNSEL:** [*1] For Rebecca Sills, PLAINTIFF: Cynthia Rockwell, Haller & Colvin PC, Fort Wayne, IN.

For Bendix Commercial Vehicle Systems LLC, DEFENDANT: Michael L Tooley, Ryan McCabe Poor, Ice Miller, Indianapolis, IN.

**JUDGES:** Roger B. Cosbey, United States Magistrate Judge.

**OPINIONBY:** Roger B. Cosbey

**OPINION: ORDER**

This matter is before the Court on the Motion to Compel filed by the Plaintiff. On March 3, 2005, argument was heard on the motion. For the reasons provided, the motion will be GRANTED.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case has been brought by the Plaintiff, Rebecca Sills, alleging that she was discriminated and retaliated against for seeking leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. (FMLA). While the details of her allegations are not particularly important for purposes of our discussion here, the Defendant seeks to characterize it as simply one about FMLA eligibility and whether Bendix can be estopped to assert that the Plaintiff was ineligible for FMLA coverage. The Plaintiff maintains that her case is more than that, and, judging from her complaint, we agree.

At present, the Plaintiff seeks documents responsive [*2] to her First Request for Production of Documents, and more particularly, Request No. 12: The complete personnel files, including any independent files kept by supervisors, time cards, attendance records, FMLA requests and responses and disciplinary actions, of all employees who performed the same or similar duties as Plaintiff from January 1, 1998 to the present.

After some discussion between counsel, the Request has been narrowed to a request that the Defendant produce "copies of all FMLA paperwork, including initial application and determinations with reasons as to whether granted or not, all disciplinary actions taken against all such employees since 2000, and all attendance records of such employees since 2000 for current and former employees who had requested FMLA leave at any time from January 1, 2000, to the present." (See Mot. to Compel at 3.)

The Defendant maintains that even when narrowed, the Request is irrelevant, too broad, and unduly burdensome. In particular, counsel maintains that if forced to comply, the Defendant at some point will need to comb through a warehouse containing time

card records for a number of employees and that this process is cumbersome, [*3] time-consuming, and unnecessary.

**STANDARD ON MOTION TO COMPEL DISCOVERY**

[HN1]Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." *Sanyo Laser Prods. v. Arista Records, Inc.*, 214 F.R.D. 496, 498 (S.D. Ind. 2003) (quoting *Davenport v. Ind. Masonic Home Found., Inc.*, 2003 U.S. Dist. LEXIS 6350, 2003 WL 1888986 at *3 (S.D. Ind. March 27, 2003) (quoting Rule 26(b)(1))). This is somewhat of a restriction of what was previously allowed in discovery prior to this rule's revision in 2000, in that discovery was then broadly defined as any information relevant to the subject matter involved in the pending action. *Id.* Nevertheless, even under the revised rule, [HN2]parties are still able to obtain discovery that is relevant to the subject matter involved in the pending action if good cause is shown. *Id.* at 499 (citing *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.")). Under the relevancy [*4] standard, "information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Martin Props. v. Fla. Indus. Inv. Corp.*, 2003 U.S. Dist. LEXIS 6181, 2003 WL 1877963 at *2 (N.D. Ill. Apr. 14, 2003) (quoting Rule 26(b)(1)); *see also Jones v. Hamilton County Sheriff's Dep't*, 2003 U.S. Dist. LEXIS 10100, 2003 WL 21383332 at *3 (S.D. Ind. June 12, 2003).

[HN3]When the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Jones*, 2003 U.S. Dist. LEXIS 10100 [WL] at *3 (citing *Beach v. City of Olathe, Kansas*, 203 F.R.D. 489, 496 (D. Kan. 2001) (citing *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan.1999))).

**DISCUSSION**

Applying the principles outlined above to the situation here it is apparent that the motion should be granted. First, the basis for the Plaintiff's claim rests upon the assertion that the Defendant discriminated [*5] and retaliated against her because she used, and continued to need, FMLA leaves of absence. (See Pl.'s Compl. P 8.) One way to establish such a claim, either one of

discrimination or retaliation, is to show that the Defendant used the same *modus operandi* towards others similarly situated to the Plaintiff. *Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)* ("To meet her burden of demonstrating that another employee is similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects"). Thus, what the Plaintiff seeks here by way of her Request is clearly relevant to her claims, Fed. R. Civ. P. 26(b)(1), and is therefore clearly discoverable.

Nor has Bendix shown that the burden and expense of the discovery sought outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(iii). [HN4]"Before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering [*6] the truthseeking function' in the particular case before the court." *Patterson, 281 F.3d at 681* (quoting *Rowlin v. Alabama, 200 F.R.D. 459, 461 (M.D. Ala. 2001)*).

Bendix offers no "evidence" concerning the burden that will be imposed by the Request. *See Culkin v Pitney Bowes, Inc., 225 F.R.D. 69, 71 (D. Conn. 2004)* [HN5](party opposing requests for documents must demonstrate that they are burdensome or oppressive by submitting affidavits or evidence revealing the nature of the burden). Although counsel provided some information at the hearing suggesting that a burden will be imposed, we do not know the precise extent of that burden, nor has such information been properly supported by an affidavit or otherwise. In that regard, the "totality of the circumstances," *Patterson, 281 F.3d at 681*, indicates that on the one hand we have relevant information relating to the Plaintiff's claim, and on the other, unsupported assertions of burden. In weighing those two circumstances, it is clear that the truthseeking function will best be served by granting the motion. *Id.*

## CONCLUSION

Accordingly, the Motion to Compel filed [*7] by the Plaintiff is GRANTED. The Defendant is to produce the requested documents on or before March 17, 2005.

Enter for March 3, 2005.

Roger B. Cosbey,

United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2005, I electronically filed a true and correct copy of **Jennings' Response To Gauge Works' And Greg Day's Motion To Quash Subpoena Served On Bank Of America - REDACTED** with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>   Donna L. Culver
>   Michael G. Busenkill
>   MORRIS, NICHOLS, ARSHT & TUNNELL
>   1201 N Market Street
>   Wilmington, DE 19899

I further certify that on September 23, 2005, I caused a copy of **Jennings' Response To Gauge Works' And Greg Day's Motion To Quash Subpoena Served On Bank Of America - REDACTED** to be served on the following non-registered participants in the manner indicated:

### BY FIRST CLASS MAIL

>   Daniel T. Trachtman
>   WOODEN & MCLAUGHLIN, LLP
>   One Indiana Square, Suite 1800
>   Indianapolis, IN 46204-4208
>   (317) 639-6151

>   Bryan D. Wright
>   WILLIAMS MULLEN
>   401 E Market Street, Suite 101
>   Charlottesville, VA 22901
>   (434) 951-5718

_____
Seth J. Reidenberg (No. 3657)

064488.1001